EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.,
Plaintiffs-Appellees,

v.

EASTERN AIRLINES, INC.,
Defendant-Appellee.

H. Patricia Rowan GORMAN,
Plaintiff-Appellant,

v.

EASTERN AIRLINES,
Defendant-Appellee.

No. 83–5213.

United States Court of Appeals,
Eleventh Circuit.

July 17, 1984.

Judith L. Oakes, St. Paul, Minn., for Gorman.

Justine Lisser, E.E.O.C.–Appellate Sec., Washington, D.C., for the E.E.O.C.

Legal Dept-Eastern Air Lines Miami Intl. Airport, Miami, Fla., Richard P. Magurno, Ella K. Solomons, Miami, Fla., for Eastern Airlines.

Before TJOFLAT and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Patricia Gorman appeals from the district court's denial of her petition to intervene in a lawsuit between the Equal Employment Opportunity Commission (EEOC) and Eastern Airlines in which the EEOC alleged that Eastern had violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., by not hiring Gorman and 22 other women as flight attendants. Gorman and several other of the charging parties sought to intervene in the suit to contest a consent decree negotiated by Eastern and the EEOC, and approved by the district court. Only Gorman has appealed the denial of the motion to intervene. We hold that the district court was correct in denying Gorman's motion to intervene, primarily because Gorman has options other than intervention available to her that preserve her rights without prejudice if she is dissatisfied with the consent decree.

## I. BACKGROUND

Gorman applied for a job with Eastern as a flight attendant in 1976, but was rejected for the position. At that time, Gorman was 45 years old. Apparently, an Eastern personnel manual in use in 1975 recommended that no one be considered for a flight attendant position who was older than the age of 28 at the time he or she applied. Eastern claims, however, that Gorman's age had nothing to do with Eastern's failure to hire her. Rather, Eastern claims that it rejected Gorman because of her appearance. At any rate, Gorman filed a charge of employment discrimination with the Department of Labor in 1977, alleging that Eastern had discriminated against her on the basis of age. In 1979, Gorman filed a private action pursuant to the ADEA against Eastern in federal district court in Minnesota, where Gorman resides. Shortly thereafter, in December, 1979, the EEOC, to whom enforcement of the ADEA had been transferred from the Department of Labor, filed suit in Miami, Florida against Eastern, alleging that Eastern had violated the ADEA by refusing to hire persons aged 40 or older as flight attendants. The EEOC named nineteen people who had been affected, including Gorman, as "charging parties" in the complaint. The EEOC later added four more charging parties. In 1981, Gorman's case was consolidated with the EEOC case and transferred to Florida. The EEOC took primary responsibility for discovery and settlement negotiations in the case.

Following extensive discovery and negotiations, the EEOC and Eastern entered into a consent decree, which was filed in the district court on March 26, 1982. The consent decree provided that Eastern would hire 12 of the 23 charging parties, and would pay $30,000 in cash and $35,000 in travel credits as damages to be divided among the charging parties. In return, each of the charging parties was to release Eastern of her claims, and Gorman was to

dismiss her still-pending suit against the airline.

Upon learning of the terms of the consent decree, Gorman and fifteen other charging parties, apparently dissatisfied with the settlement, sought to intervene in the EEOC case pursuant to Fed.R.Civ.P. 24, and moved to vacate the consent decree. The district court denied the motion to intervene and failed to rule on the motion to vacate. Gorman was the only charging party to appeal.

## II. DISCUSSION

Gorman raises two issues on appeal. The first, which, as we explain below, we do not reach on the merits, is whether the district court erred in failing to vacate the consent decree. The second is whether the district court erred in denying Gorman's motion to intervene.

### A. The District Court's Failure to Vacate the Consent Decree.

We cannot reach Gorman's first issue because it is not properly before this Court. Gorman's right to move to vacate the consent decree was, of necessity, predicated on her ability to intervene successfully in the EEOC case. Otherwise, Gorman, as a nonparty to the EEOC suit, would lack standing to move to vacate the consent decree, or to make any other motion, in the EEOC case. Thus, the district court failed to rule on Gorman's motion to vacate because it lacked jurisdiction over her motion. Of course, if we were to reverse the district court and hold that Gorman was entitled to intervention, Gorman would be free on remand to renew her motion to vacate the consent decree. We do not so hold, however.

### B. Denial of Motion to Intervene

■ Before discussing the merits of this issue, we note that although denial of a petition to intervene is not considered an appealable final order, we have jurisdiction to review this issue under the circuit's "anomalous rule." *See United States v. Jefferson County,* 720 F.2d 1511, 1515 & n. 12 (11th Cir.1983); *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 & n. 7 (5th Cir.1977). Under the "anomalous rule," we have provisional jurisdiction to determine whether the district court erroneously concluded that the appellant was not entitled to intervene under Rule 24. If we find that the district court's disposition of the petition to intervene was correct, then our jurisdiction evaporates because the proper denial of leave to intervene is not a final decision, and we must dismiss these appeals for want of jurisdiction. But if we find that the district court was mistaken, then we retain jurisdiction and must reverse. In either event, we are authorized to decide whether the petition to intervene was properly denied.

Rule 24 of the Federal Rules of Civil Procedure distinguishes between "intervention of right" (Rule 24(a)) and "permissive intervention" (Rule 24(b)).[1] Although Gor-

1. Rule 24 provides:
    *Rule* 24. Intervention
    (a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
    (b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
    (c) *Procedure.* A person desiring to intervene shall serve a motion to intervene upon

man moved for either intervention of right or permissive intervention, the district court apparently treated her motion as one for intervention of right only. Nevertheless, for the same reason that we hold Gorman was not entitled to intervention of right, we also hold that the district court would not have abused its discretion by denying permissive intervention.

One of the reasons that Gorman petitioned to intervene in the EEOC case was uncertainty over the status of her separate, private ADEA action against Eastern. The few cases that have interpreted § 7(c)(1) of the ADEA have reached conflicting results regarding whether an individual's private ADEA suit remains viable following the EEOC's entry into the same controversy. Because of that uncertainty, Gorman was forced to petition to intervene in the EEOC case to protect her rights completely. Otherwise, she might have found that her own suit was foreclosed and that she had no opportunity to challenge the relief afforded her by the EEOC/Eastern consent decree. The district court, however, never explicitly ruled on whether Gorman's private action

remained viable.[2] Instead, the district court denied Gorman's petition on several other grounds.[3]

We do not decide whether any of the grounds for denial relied upon by the district court were erroneous. Rather, we examine whether Gorman's separate private ADEA action against Eastern is still viable in light of the EEOC-Eastern settlement. If Gorman's separate suit is still viable, then she has a choice that effectively preserves all of her rights, without the need to intervene in the EEOC case. That choice would allow her either to join in the consent decree, which explicitly requires her to dismiss her suit against Eastern, or to forego the benefits of the consent decree and continue with her private action against Eastern in the hope of obtaining more favorable relief for herself. Either way, Gorman's rights would be protected; therefore, she would not be entitled to intervention.

Under Rule 24(a), one is entitled to intervention of right only if she "is so situated

the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C. § 2403.

2.  Of course, although such a ruling might have clarified Gorman's right to continue with her private suit against Eastern, it would have had no effect on the rights of the other petitioning charging parties, who had not filed private ADEA actions independent of that filed by the EEOC.

The district court implied that it believed Gorman's cause of action was terminated by the EEOC suit. The district court stated, "Along with its statutory expression indicating age discriminatees are to be made whole, Congress declared that an aggrieved employee's private right of action shall terminate upon the [EEOC's] suit to enforce that employee's right." [footnotes omitted] The district court made

that statement, however, in the context of a discussion wherein the court was attempting to balance the individual rights of the charging parties against Congress's intent to promote mass dispute resolution by the EEOC. Additionally, we note that the district court's statement is not inaccurate insofar as at least some employee's private rights of action are terminated when the EEOC files suit—the question here, however, which we answer below, is whether the filing of a suit on an individual's behalf by the EEOC terminates a private action filed before the EEOC files suit.

3.  The district court cited at least three reasons for denying the motion to intervene. First, it found that the motion was untimely. Second, the court found that although Gorman had a substantial interest in the outcome of the litigation, that interest was outweighed by Congress's intent to give the EEOC primary responsibility for litigating ADEA cases on behalf of individuals. Finally, the court found that the EEOC had protected Gorman's rights by providing adequate representation for Gorman. In other words, despite Gorman's expressed dissatisfaction with the consent decree, the district court found that, in light of all the circumstances, the consent decree negotiated by the EEOC was fair to the parties, including Gorman, on whose behalf the EEOC had filed suit.

that the disposition of the action may as a practical matter impair or impede [her] ability to protect that interest ...." If Gorman can proceed with her own action independently of the EEOC suit, then the settlement of the EEOC suit cannot "impair or impede" her ability to seek her own relief. Therefore, she would not be entitled to intervention of right.

Under Rule 24(b), one is entitled to permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The district court found that permitting intervention by Gorman and other charging parties would delay the rights of those charging parties interested in partaking of the settlement. Now that Gorman is the only party to appeal the denial of intervention, it becomes even more prejudicial to the rights of the other charging parties to allow further delay, particularly if Gorman is in a position to pursue her own cause of action against Eastern. Therefore, if Gorman's cause of action remains viable, we must uphold the district court's discretion in denying her petition for permissive intervention.[4]

We now reach the issue of the continued viability of Gorman's suit against Eastern. The resolution of that issue depends on the construction of § 7(c)(1) of the ADEA, 29 U.S.C. § 626(c)(1). Section 7(c)(1) provides "that the right of any person to bring [an ADEA] action shall terminate upon the commencement of an action of the [E.E.O.C.] to enforce the right of such employee under this chapter." Eastern argues that when the EEOC files an ADEA suit, the effect of § 7(c)(1) is to terminate a private action completely, whether it was brought before the EEOC suit was filed or after. The EEOC, however, in an apparent reversal of its position

in the district court, argues that the words "to bring" in § 7(c)(1) mean the same as "to commence," and that therefore, § 7(c)(1) bars only the "commencing" of an ADEA private action after the EEOC has filed its own action. Gorman urges us to adopt the EEOC position.

So far, the courts that have considered this issue have split in their interpretations of § 7(c)(1). In *Burns v. Equitable Life Assurance Society of the United States*, 696 F.2d 21 (2d Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 336, 78 L.Ed.2d 306 (1983), the Second Circuit affirmed the district court's opinion that the words "to bring" mean only "to commence," rather than to "commence or maintain," and held that § 7(c)(1) only curtails an individual's right to commence or file a suit, not to continue an ongoing action. *Burns* is the only circuit court case yet to interpret § 7(c)(1). At least two district courts, however, have interpreted § 7(c)(1) to bar the right of a complainant to continue an action which was commenced prior to the EEOC action. *See Jones v. City of Janesville*, 488 F.Supp. 795 (W.D.Wis.1980); *Castle & Papastrat v. Sangamo Weston, Inc.*, (N.D. Fla.1983); *appeal pending*, No. 83–3236. In *Janesville*, the district court construed "bring" as "bring or maintain." 488 F.Supp. at 797. The EEOC argues that *Janesville* erroneously construed § 7(c)(1) by inserting an extra word that was not necessary to determine the plain meaning of the statute. In *Castle & Papastrat* the district court relied on its interpretation of the legislative history of the ADEA to find that Congress intended that § 7(c)(1) act as a means of restricting private litigation in favor of administrative remedies. The EEOC argues that the district court in *Castle & Papastrat* cited no specific legislative authority for the interpretation of § 7(c)(1), and that the court's interpretation is contrary to the wording of the statutes and to other relevant legislative history.

---

**4.** Of course, if we were to hold that Gorman's private suit was terminated, we would still have to examine whether any of the district court's other reasons for denying intervention were sufficient in themselves to justify the denial.

The EEOC concedes that the legislative history of the ADEA is mum regarding Congress's intent in enacting § 7(c)(1). Nevertheless, the EEOC notes that in *Burns* the court recognized that § 7(c)(1) was based on a similar provision set forth in § 16(b) of the Fair Labor Standards Act (FLSA).[5] Section 16(b) of the FLSA states that the right of any employee "to bring" an action "shall terminate upon the filing of a complaint by the Secretary of Labor." The legislative history of § 16(b) of the FLSA makes it quite clear that "to bring" means "to commence." *See Burns*, 696 F.2d at 23. The EEOC also argues that its position as an administrative agency interpreting one of the statutes that it is responsible for is entitled to deference.

On the other hand, Eastern asserts that § 7(c)(1) cuts off all actions whether brought prior to or after the EEOC action.[6] Eastern argues that *Burns* is bad law, derived from an unusual set of facts. In *Burns*, a large scale staff reduction resulted in the termination of over 500 employees, 360 of whom were over 40 years of age. The initial complaint was filed in September, 1979, by Kay Burns and other named plaintiffs, alleging violations of the ADEA. Nearly two years later, the EEOC filed its own action against the employer, complaining of the same ADEA violation. As exhibit "A" to its complaint, the EEOC attached a list of 434 past and present employees including a number of the *Burns* plaintiffs. Two days later, the EEOC entered a stipulation removing from its exhibit "A" all the *Burns* plaintiffs. Thus, the *Burns* plaintiffs were represented by the EEOC for only two days. Nevertheless, the employer tried to argue that the filing of the EEOC action naming some

of the *Burns* plaintiffs terminated the previously filed private action under § 7(c)(1). For the reasons stated above, the Second Circuit disagreed. Eastern argues that the *Janesville* and *Castle & Papastrat* cases are better law, because § 7(c)(1) was designed to alleviate the fear of American businesses that they would be overwhelmed by numerous private suits. Therefore, asserts Eastern, Congress intended that all private ADEA actions be cut off by the filing of the EEOC action against the same employer.

We are not persuaded by Eastern's arguments. First, Eastern's attack on the *Burns* case based on the peculiar *facts* of that case fails to demonstrate a reason why we should not adopt the *Burns* court's *legal* analysis. We find the *Burns* court's extensive review of the legislative history of the ADEA and its antecedents in the FLSA much more persuasive than the *Castle & Papastrat* court's conclusory and undocumented findings regarding the ADEA legislative history. Additionally, we disagree with Eastern's conclusion that Congress intended for an EEOC action enforcing the ADEA to cut off *previously* instituted private ADEA actions. Such a policy clearly would discourage attorneys from agreeing to file private ADEA actions on behalf of aggrieved individuals, since any such suit, no matter how close to resolution, or how much time spent, could be cut off by the EEOC filing a similar suit. At the same time, § 7(c)(1) serves a useful purpose by preventing the filing of "copycat" suits by attorneys who only follow the EEOC's lead, hoping to reap the benefits of the EEOC's success.

We hold that Gorman's private ADEA action against Eastern, commenced prior to

---

**5.** Although the legislative history of § 7(c)(1) makes no mention of the FLSA as a model, the legislative history of § 7(b) of the ADEA makes it clear that that section specifically incorporates most of the enforcement provisions of the FLSA, including § 16(b). *See Burns*, 696 F.2d at 23.

**6.** Eastern complains that the EEOC has changed its position from the time of trial to the time of this appeal, and that therefore its position has

been inconsistent and is not entitled to any deference. It does appear that during arguments on the motion to intervene at trial, the EEOC agreed with Eastern that § 7(c) and the consent judgment cut off any further rights by Gorman to pursue her suit. That argument was made by the EEOC's regional office in Florida. The EEOC brief on appeal has been prepared by the Washington office, and appears to represent the agency's official position.

the EEOC's suit naming Gorman as a charging party, remains viable at this time. Gorman is free to continue with her suit, or if she prefers, to dismiss her suit pursuant to the EEOC/Eastern consent decree and participate in the relief provided under the terms of that settlement. Because Gorman's private action is still alive, we hold that the district court was correct in denying Gorman's motion for intervention of right, and that the district court did not abuse its discretion in failing to grant Gorman's motion for permissive intervention.

Having determined that the trial court's denial of the motion to intervene was correct, such denial was not an appealable final order and the appeal must be dismissed. *See United States v. Jefferson County*, 720 F.2d 1511, 1515 & n. 12 (11th Cir.1983), discussed at page 637, *supra*.

APPEAL DISMISSED.