**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, as Receiver for Sunrise Savings and Loan Association, a Federal Savings and Loan Association, Plaintiff–Appellee,**

v.

**FALLS CHASE SPECIAL TAXING DISTRICT, et al., Defendants,**

George Suess, Clarence E. Stewart, Maxine L. Terrell, Pat Whittaker, Mary Ann Gast, Defendants/Intervenors–Appellants.

No. 91–3503.

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 1993.

Thomas R. Grady and Michael W. Pettit, Naples, FL, for appellants.

F. Perry Odom; Ervin, Varn, Jacobs, Odom & Ervin; Mahoeny, Adams & Criser, Don Lester, Jacksonville, FL; Jeffrey Dikman, Tax Section, FL AG, Tallahassee, FL; Benjamin K. Phipps, Fine, Jacobson, Schwartz, Nash, Block & England; and

Herbert W.A. Thiele, County Atty., Leon County Atty's Office, Tallahassee, FL, for appellee.

Before HATCHETT, Circuit Judge, and HENDERSON and ESCHBACH [*], Senior Circuit Judges.

HATCHETT, Circuit Judge:

The appellants, proposed intervenors, appeal the district court's denial of their motion to intervene in this litigation as a matter of right, pursuant to Federal Rules of Civil Procedure 24(a). Because we find that the intervenors' interests may not be adequately protected through the efforts of the existing parties, we reverse the district court.

## I. BACKGROUND

In the mid–70s, Leon County, Florida, created a special taxing district for residential units and named it the Falls Chase Special Taxing District ("the District"). The District's charter authorized it to issue bonds in order to construct capital improvements such as streets, water and sewer facilities, and an electrical system. The charter also authorized the District to levy ad valorem taxes and special assessments to satisfy the interest and principal payments for the bonds. The charter provided that the bonds be issued in accordance with applicable laws and also required public validation.

Pursuant to its charter and a district vote, the District issued four bond issues for the following: (1) road bonds—$1.74 million; (2) water and sewer bonds—$1.94 million; (3) parks and recreation bonds—$1.82 million; and (4) electrical bonds—$500,000. Quincy State Bank acted as trustee for the bond issues and held the District's indentures of trust. Further, the District entered into four amended bond

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

resolutions with the respective bond holders. The Florida state courts validated the District's four bond issues.

Quincy State Bank served as the original bond trustee until May 25, 1979. The successor bond trustee to Quincy State Bank was Metropolitan Bank and Trust Company ("Metropolitan") which served as bond trustee from May 25, 1979, until February 12, 1982. The FDIC then liquidated Metropolitan and, according to a purchase and assumption agreement, transferred Metropolitan's assets and liabilities to Great American Bank of Tampa ("Great American"). Great American served as bond trustee from February 12, 1982, until July 25, 1983, when Barnett Banks Trust Company, N.A. ("Barnett") bought out Great American. Thus, on July 25, 1983, Barnett Banks became successor trustee of the District's bond issues.

The bond resolutions provided that special assessments would be used to pay the semi-annual interest on the bonds. These assessments would be levied against the real property contained in the District. The assessments, however, could not exceed the reasonable value of the improvements to the individual properties. Should the District determine that the special assessments would not cover the interest and principal payments as the bonds became due, the bond resolutions compelled the District to levy ad valorem taxes on all real property in order to make up the deficiency. No limit existed on the amount of ad valorem taxes that could be assessed against the property owners to meet the District's bond obligations.

The ex officio tax collector for the District is the Leon County Tax Collector. Pursuant to statute and District authorization, the tax collector collects both the ad valorem taxes and the special assessments. Prior to the initiation of this lawsuit, the Leon County Tax Collector collected the ad valorem taxes and special assessments the District levied. The revenues the tax collector received were given directly to the District. The District then sent the appropriate amount to the bond trustee in order to pay bond interest. Allegedly, the District did not remit sufficient monies to the trustee to fund a sinking fund reserve account for the bonds as its bond resolutions and trust indentures required. Until 1986, the trustee paid the interest payments on the bonds to the bondholders.

On October 24, 1985, Sunrise Savings and Loan Association ("Sunrise"), the predecessor of the current plaintiff, the FDIC, filed suit against the District in state court seeking declaratory and injunctive relief concerning the receipt of the taxes and special assessment revenues. Sunrise also named in its suit the Florida Department of Revenue, the District's ex officio Tax Collector, Leon County's Property Appraiser, and the ex officio Supervisor of Elections in their official capacities. Later, Sunrise amended the complaint to add counts against the Leon County Tax Collector seeking to compel payment of the assessment and tax revenues directly to the trustee. Essentially, Sunrise challenged the District's validity and the District's power to raise revenues through ad valorem taxes and special assessments. Sunrise also filed a second complaint against the District in state court.

On March 17, 1986, Sunrise ordered the tax collector to discontinue remitting the ad valorem tax and special assessment revenues directly to the District, and instead remit the funds to the trustee. Sunrise made this demand in order to insure proper financing for the sinking fund reserve account for the bonds. The District objected to Sunrise's demand, arguing that the revenues financed other items besides the bonds, including the District's operating budget.

On October 1, 1986, Sunrise's receiver, the FSLIC, removed the two state cases to federal court. Since the cases' removal, the tax collector has deposited tax and assessment revenues with the district court, and the court has controlled disbursement of these monies. Upon removal, the district court granted the FSLIC leave to file an amended complaint.

On January 20, 1989, the district court formally granted the FDIC's (as successor to the FSLIC) motion to amend the com-

## 214

plaint and ordered that the amended complaint shall stand as filed. In its amended complaint, the FDIC named Barnett, the current bond trustee, as a defendant.

Two counts in the amended complaint, Counts XII and XIII, concerned Barnett. In Count XII, the FDIC sought a declaration that the District was so substantially flawed in its formation that the District was void *ab initio.* Accordingly, the FDIC charged that any actions the District has taken (including the issuance of bonds and the levying of taxes) are void.

The district court granted partial summary judgment in favor of Barnett on Count XII, finding that because the state courts validated the District, the District's validity cannot be collaterally attacked in federal court. The district court did not rule on the validity of the District's funding mechanisms or the bond issues.

In Count XIII, the FDIC sued Barnett in its capacity as property owner in the District, mortgage holder of property in the district, and nominal bondholder. Count XIII charged Barnett with negligence, breach of fiduciary duties as bond trustee, neglecting to take action when tax revenues were paid to the District instead of the trustee, allowing construction fund withdrawals for allegedly improper purposes, allowing the District to commingle funds, and five allegedly improper monetary transfers. The relief sought in Count XIII included damages and an accounting of all financial transactions concerning the District's bond trust accounts.

On May 22, 1989, the appellants moved to intervene as of right and permissively as class representatives of the District's bondholders. In the appellants' cross-claim against Barnett, they alleged claims for negligence, breach of fiduciary duties, common law fraud, violations of federal and state securities laws, and violations of the Trust Indenture Act. The intervenors sought not only damages and an accounting, but also an injunction prohibiting Barnett from serving as trustee. Further, as bondholders, the intervenors expressed concern about challenges to the District's validity and the validity of the bond issues.

Only Barnett and the District opposed the appellants' motion to intervene.

The district court denied the appellants' motion for intervention. The district court noted that the question of the validity of the District was mooted when it granted summary judgment concerning the issue. Moreover, the court stated that the FDIC was pursuing claims against Barnett for negligence and breach of fiduciary duties. Thus, the district court ruled that the appellants did not show that the current parties to the litigation did not adequately represent their interests.

## II. ISSUE

Because the appellants appeal only the denial of their motion for leave to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), the sole issue in this case is whether the district court erred in denying the appellants' motion to intervene as of right.

## III. JURISDICTION AND STANDARD OF REVIEW

■ Generally, the denial of a motion to intervene is not considered a final appealable order over which we have jurisdiction. Jurisdiction is created, however, under this circuit's "anomalous rule" which grants "provisional jurisdiction to determine whether the district court erroneously concluded that the appellant was not entitled to intervene under Rule 24." *E.E.O.C. v. Eastern Airlines, Inc.,* 736 F.2d 635, 637 (11th Cir.1984). Thus, should we determine that the district court correctly ruled on the petition to intervene, our jurisdiction disappears because the district court's ruling would not be a final decision. On the other hand, should we determine that the district court erroneously ruled on the motion to intervene, we maintain jurisdiction and must reverse the ruling. *E.E.O.C.,* 736 F.2d at 637. *See also Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 & n. 7 (5th Cir.1977).

■ This court will review the denial of a motion for intervention as a matter of right for error. *Walters v. City of Atlan-*

*ta,* 803 F.2d 1135, 1151 n. 16 (11th Cir. 1986). Federal Rules of Civil Procedure 24(a) provides:

> Upon timely application anyone *shall* be permitted to intervene in an action; ... ■ when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ After the district court makes certain findings of fact concerning a motion for intervention as a matter of right, an application of those facts to the law will mandate a particular result. Because the district judge does not have any discretion in rendering this determination, we review the denial of intervention as a matter of right for error in the application of the rule. *See also Sierra Club v. Robertson,* 960 F.2d 83, 85 (8th Cir.1992) (citing *Walters* to support the proposition that, except as to timeliness, the denial of a motion to intervene as a matter of right should be reviewed *de novo*).

## IV. DISCUSSION

■ In *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989), this court set out four criteria which must be met under rule 24(a)(2) to allow a party to intervene as a matter of right. Once a party establishes these criteria, the district court must allow the party to intervene. Pursuant to the *Chiles* criteria, a proposed intervenor must show: (1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests. *Chiles,* 865 F.2d at 1213.

In the district court, Barnett and the District opposed the appellants' intervention solely on the basis that the parties in the litigation adequately represented the appellants. The district court agreed, stating that the appellants "did not show that, absent intervention, disposition of the action may impair or impede their ability to protect their interest, nor have they shown that their interests are not adequately represented at this time." The district court, however, was not called upon to make rulings on the other *Chiles* criteria. Thus, on appeal, this court will address only whether the appellants' rights are adequately represented in the litigation. Although Barnett argues that the appellants' motion was not timely, Barnett did not present this argument to the district court. Because the district court made no mention of timeliness in its order denying intervention, we deem Barnett's argument on timeliness waived.**

■ In this case, the court must examine the adequacy of the representation of appellants' interests. We will find that representation is adequate " 'if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor, and if the representative does not fail in fulfillment of his duty.' " *United States v. United States Steel Corp.,* 548 F.2d 1232, 1236 (5th Cir.1977) (quoting *Martin v. Kalvar Corp.,* 411 F.2d 552, 553 (5th Cir.1969)). This court will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention. *See Athens Lumber Co., Inc. v. Federal Election Comm'n,* 690 F.2d 1364, 1366 (11th Cir.1982), *cert. denied,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984); *International Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978).

■ Essentially, the appellants possess two ultimate objectives in this case. The first objective is to protect the validity of the bonds. The second objective is to pursue claims of negligence and breach of fiduciary duty against Barnett. The dis-

---

** Similarly, Barnett waived any argument on the other *Chiles* factors in the district court.

trict court found that current parties in the litigation were pursuing the appellants' interest in maintaining the validity of the bonds. The district court did not denote which parties it believed to be representing the appellants regarding this objective. Barnett asserts that it is one of the parties protecting the validity of the bonds. Additionally, the district court found that the FDIC was pursuing the proposed intervenors' allegations against Barnett.

Therefore, the district court ruled that parties with divergent and antagonistic interests, Barnett and the FDIC, together represented the interests of the intervenors. In this litigation, Barnett seeks to uphold the validity of the bonds. The appellants and the FDIC, however, charge that Barnett has acted negligently in its duties as trustee. Hence, the FDIC is the party that supposedly represents the appellants' claims concerning Barnett's negligence.

The FDIC's true interest in this case lies in its role as a landowner and mortgagee. The FDIC owns only one bond from each of the four issues. Because the FDIC is a nominal bondholder and is arguing that the bonds themselves are invalid, the FDIC possesses interests that are antagonistic to one of the appellants' ultimate objectives. Clearly, should the FDIC be successful in convincing the district court that the bonds are invalid, the appellants' interests will be impaired. *See Chiles*, 865 F.2d at 1213. Further, the appellants argue that the FDIC could not adequately represent their interests because it is engaging in settlement negotiations with Barnett rather than vigorously prosecuting the negligence and breach of fiduciary duty claims. The appellants also seek to remove Barnett as trustee, a remedy that the FDIC does not request in its complaint. Similarly, although Barnett seeks to uphold the validity of the bonds—one of the appellants' objectives—it also seeks to avoid liability for its acts as trustee for the District. Therefore, Barnett also possesses interests that are antagonistic to one of the appellants' ultimate objectives.

The proposed intervenors' burden to show that their interests *may be* inadequately represented is minimal. *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972)). Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action. *See also Sierra Club*, 960 F.2d at 86. Given the fact that the parties in the litigation that allegedly represent the appellants' interests possess interests inimical to the appellants, we conclude that the existing parties to the lawsuit may not adequately represent the appellants.

## V. CONCLUSION

Because we find that the appellant's interests may not be adequately represented, we reverse the order of the district court denying the appellants leave to intervene as a matter of right.

REVERSED.