[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 07, 2002
THOMAS K. KAHN
CLERK

No. 99-12938

D. C. Docket No. 75-03096-CV-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CITY OF MIAMI, FRATERNAL ORDER OF POLICE LODGE #20,
PROFESSIONAL FIREFIGHTERS OF MIAMI, LOCAL 587,
INTERNATIONAL,

Defendants,

MIAMI COMMUNITY POLICE BENEVOLENT
ASSOCIATION, a.k.a. MCPBA,

Appellants.

Appeal from the United States District Court
for the Southern District of Florida

**(January 7, 2002)**

Before TJOFLAT, HILL and POLITZ*, Circuit Judges.

TJOFLAT, Circuit Judge:

The Miami Community Police Benevolent Association appeals a district court order denying its motion for leave to intervene as of right, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. The district court denied the motion on the ground that the association's interests were adequately represented by the parties in the case. We find no error in the court's denial of the motion on that ground and therefore affirm its ruling.

## I.

This lawsuit began on December 29, 1975, when the United States filed a complaint against the City of Miami ("City"), various city officials, and the

---

*Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

Fraternal Order of Police ("FOP")[1], alleging violations of Title VII of the Civil Rights Act of 1964, the Fourteenth Amendment, and 42 U.S.C. §§ 1981, 1983. Specifically, the United States alleged that the defendants pursued policies and practices discriminating against black, Spanish-surnamed, and female individuals with respect to employment opportunities and conditions of employment with the City.[2]  The complaint sought temporary and permanent injunctive relief.  See United States v. City of Miami, 664 F.2d 435, 436 (5th Cir. 1981) (en banc).

On December 30, 1975, the day after the complaint was filed, the City filed an answer denying the charges of discrimination.  A month later the FOP likewise filed an answer denying the allegations of the complaint and raising thirteen affirmative defenses.  On February 18, 1976, the United States and the City presented the court with a proposed consent decree.  The court entered the

---

[1] The United States also named as a defendant the Miami Police Benevolent Association ("PBA"), an organization altogether different from the movant in this case, the Miami Community Police Benevolent Association.  The PBA was dismissed as a party, however, by the Fifth Circuit, which "could discern no reason why the PBA had been joined as a defendant, nor why it should be enjoined by the court."  See United States v. City of Miami, 664 F.2d 435, 437-38 (5th Cir. 1981) (en banc).

[2] The complaint alleged discriminatory practices in various city departments, including the police department.  For some reason, the Government joined as a party defendant the police union, the FOP.  Other unions representing city employees were either not named defendants or were denied leave to intervene.

decree over the FOP's objections. Nine days later, the FOP filed a motion to vacate the decree. After hearing argument on the motion, the court vacated the decree on April 2, 1976, stating that it had been "improvidently signed" because some of its provisions violated the collective bargaining agreement between the City and the FOP.

After a series of unsuccessful negotiations with the FOP, the United States and the City moved the district court on November 17, 1976, to reinstate the consent decree. The FOP objected to the entry of the decree, contending that, if implemented, it would discriminate against whites, institute a quota system, and violate the union contract because it would permit promotions without following the civil service testing procedure. In response, the United States and the City made a few modifications to the decree, and, even though the FOP still opposed its entry, the district court, on March 29, 1977, approved the decree, as modified ("1977 Consent Decree"), and entered it. The FOP appealed, and a panel of the Fifth Circuit, our predecessor, affirmed. See United States v. City of Miami, 614 F.2d 1322 (5th Cir. 1980).

On rehearing en banc, the court remanded the case with the instruction that the district court determine "whether the United States has the right to claim any relief concerning police promotion" and modify the decree to

4

provide that it "does not affect the promotion of members of the Police Department." City of Miami, 664 F.2d at 448. On remand, and following a period of negotiations, the FOP relented and agreed to the re-entry of the 1977 Consent Decree.

Over time, the demographic makeup of the police department changed dramatically, and, in March 1999, the United States moved the district court to enter an order terminating the 1977 Consent Decree "as to all departments, agencies, and positions of the defendant City of Miami," and implementing a provision it had proposed concerning "sworn classified positions in the police department . . . and the entry-level position of public service aide." With regard to these latter positions, the United States had discovered that the selection procedures the City had been using had a "significant adverse impact against black test-takers" with potential "shortfalls of 18 black male and 14 black female hires." Therefore, the United States urged the court to "enter a[n] . . . order which directs the City to continue the development of lawful selection procedures, upon completion of which to the Court's satisfaction the order shall expire." The City did not oppose the United States' motion, and the FOP essentially supported it.[3]

_____

[3] The FOP took no position with regard to the initial hiring of police officers because "initial candidates for employment are not part of the bargaining unit represented by the FOP."

5

Consequently, on May 4, 1999, the district court entered an order "superseding the 1977 Consent Decree with respect to public service aide and sworn classified positions in the police department, and terminating the 1977 Consent Decree with respect to all other city departments." After reviewing the "United States' motion and the entire record in this matter," the court found "that the basic objectives of the consent decree have been achieved, the City has acted in good faith compliance with the decree, and the vestiges of past discriminatory practices against blacks, Hispanics, and women have been eliminated to the extent practicable." Nonetheless, with respect to the public service aide and sworn classified positions (i.e., police officer, sergeant, lieutenant, and captain), the court ordered the City to: (1) continue developing lawful selection procedures for screening and hiring candidates for these positions, (2) report to the court every four months on the development of these selection devices, (3) allow the United States' expert in test development to examine and review any selection device proposals, (4) mark all material related to selection development as "confidential test material" prior to disclosing it to the expert, (5) provide assistance to applicants to prepare for any selection exams given, (6) develop appropriate recruitment procedures, (7)

6

maintain adequate records, and (8) "attempt in good faith to resolve informally any dispute [with the United States] which [may] arise[]."

Over two months after the district court entered this order, the Miami Community Police Benevolent Association ("MCPBA") moved to intervene as of right, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, arguing that its interests were not adequately represented by the parties to the case.[4] Specifically, the MCPBA asserted that "[a]lthough a majority of the MCPBA membership are also FOP members," the FOP cannot "adequately represent their interests as FOP's position is diabolically (sic) opposed to that of [the MCPBA]." The MCPBA conceded that positive steps had been taken to eliminate the discriminatory practices that had given rise to the lawsuit but contended that such steps were "not consistent or adequate with regard to blacks and women throughout all levels of the police department, nor FOP leadership." Indeed, the MCPBA contended, "[t]here are important units within the police department which have no female representation, such as 'auto theft' and 'economic crimes.'" Moreover, the MCPBA claimed that the FOP had not effectively communicated the developments of the consent decree

---

[4] In the early stages of this litigation, soon after the United States filed the complaint, the MCPBA sought to intervene as a co-plaintiff. The district court, however, denied the motion on April 2, 1976.

to its members.  The MCPBA made no mention of the ability of the United States to represent adequately its members' interests.

The district court denied the MCPBA's motion after finding that "the purported interests of [its] members, which the organization seeks to protect through intervention, are adequately represented by the existing parties."  This appeal followed.

II.

This circuit's "anomalous rule" gives us provisional jurisdiction to determine whether the district court erred in denying a motion to intervene under Rule 24.  Chiles v. Thornburgh, 865 F.2d 1197, 1212 (11th Cir. 1989).  If we find that the district court was correct, then "our jurisdiction evaporates because the proper denial of leave to intervene is not a final decision, and we must dismiss [the] appeal[] for want of jurisdiction."  Id. (first alteration in original) (quoting E.E.O.C. v. Eastern Airlines, Inc., 736 F.2d 635, 637 (11th Cir. 1984)).  If we find, however, that the district court erred in denying the motion to intervene, then we retain jurisdiction and must reverse.  Id.

A party seeking to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure[5] must establish:

---

[5] Rule 24(a) of the Federal Rules of Civil Procedure states in pertinent part:
Intervention of Right.  Upon timely application anyone shall be permitted to

8

(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Chiles, 865 F.2d at 1213. We review the district court's denial of a motion to intervene as of right *de novo*. Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1512 (11th Cir. 1996).

In denying the MCPBA's motion to intervene, the district court focused entirely on the MCPBA's failure to establish the fourth requirement for intervention – that the MCPBA's "interest is represented inadequately by the existing parties to the suit." Because we agree that the MCPBA failed to show that its interest was not adequately represented by the parties, we limit our discussion to this requirement.

The MCPBA must overcome a presumption – that it is adequately represented – that arises "when applicants for intervention seek to achieve the same objectives as an existing party in the case." Meek v. Metropolitan Dade County, Florida, 985 F.2d 1471, 1477 (11th Cir. 1993); Athens Lumber Co. v.

---

intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

9

FEC, 690 F.2d 1364, 1366 (11th Cir. 1982). Thus, in Athens Lumber, we found that because both the machinists union and the Federal Election Commission ("FEC") sought to uphold the constitutionality of a provision of the Federal Elections Campaign Act, their objectives were the same and the union was adequately represented by the FEC. Athens Lumber, 690 F.2d at 1366-67. Moreover, in United States v. Georgia, 19 F.3d 1388 (11th Cir. 1994), we found that a county school board, charged by law to represent the interests of the students, shared the same objective – to eliminate the detrimental impact caused by desegregation – as a group of individuals representing black students. Id. at 1394. We held, therefore, that the district court properly denied the group's motion to intervene in the case. Id.

We can discern no difference between the objectives that the United States seeks to fulfill in this case and those of the MCPBA. Indeed, the MCPBA submits that its concern in this case is "with [the] upward mobility of blacks and females," and concedes that the objective of the United States is to end discrimination "for all minorities." Nowhere does the MCPBA claim that these two objectives are mutually exclusive, or that the United States, in seeking the best "for all minorities," has neglected or will neglect the needs of blacks and women. Rather, from the instant the complaint was filed, the

10

United States has sought to eliminate employment policies and practices that discriminate against "black, Spanish-surnamed, and female individuals." The very goal of the most recent action the United States took in this case – the motion for an order effectively superseding the 1977 Consent Decree – was to protect blacks and females. In that motion, the United States moved to terminate portions of the original 1977 Consent Decree only because, as the district court properly observed, its "basic objectives . . . have been achieved, the City has acted in good faith compliance with the decree, and the vestiges of past discriminatory practices against blacks, Hispanics, and women have been eliminated to the extent practicable." With respect to certain police officer and public service aide positions, the United States even sought to supersede the 1977 Consent Decree with a decree providing better selection devices to protect the very people the MCPBA seeks to protect – blacks and women.

Because the objectives the MCPBA seeks to achieve in this case are goals shared by the United States,[6] the MCPBA's members are adequately

---

[6] In addition, the MCPBA fails to show that its objectives are different from those of the FOP. Although the MCPBA argues that the FOP's objectives are "diabolically (sic) opposed" to its own, it offers little or no evidence for support. In its motion to intervene before the district court and in its brief to this court, the MCPBA merely states that, "with regard to blacks and women," the "demographic" changes made since 1977 have not been "consistent or adequate." Besides this unsupported comment and a blank citation to an amicus brief that "the history of this case shows that the primary goal of the [FOP] has not been the advancement of the interests of African-American or female officers through the correction of past discrimination," the MCPBA never compares or contrasts its objectives with those of the FOP to show that they are

11

represented.  Accordingly, we hold that the district court did not err in denying

the MCPBA's motion to intervene.

AFFIRMED.

---

different.  Indeed, the MCPBA has presumably been quite satisfied with the FOP's objectives for the past twenty years or so, having moved the district court for leave to intervene only after the court entered its order superseding the 1977 Consent Decree.  Moreover, the MCPBA concedes that most of its members are also members of the FOP, but never explains why, if this is true, the FOP's objectives are so vastly different from the MCPBA's, nor why its members would choose to be a part of two organizations with diametrically opposed objectives.