**UNITED STATES of America,
Plaintiff–Appellee,**

**Richmond Hill; Brenda Phillips; Jennye Hardaway; Lucile M. Durham; Tommie Lee Bryant; Martha L. Dean; Charles Ridley, Intervenors–Plaintiffs–Appellees,**

v.

**STATE OF GEORGIA, Meriwether County; Meriwether County; Meriwether County Board of Education, Defendants–Appellees,**

**Robert Dorman; Coleman Bass; Ron Jackson, Proposed Intervenor–Appellants,**

**Meriwether County, Cross–Defendant.**

No. 93–8274.

United States Court of Appeals,
Eleventh Circuit.

May 4, 1994.

Joe D. Whitley, Curtis Eugene Anderson, Office of U.S. Atty., Atlanta, GA, Salliann S.M. Dougherty, Jeremiah Glassman, Mary Grey Reddick, U.S. Dept. of Justice, Civ. Rights Div., Educational Opportunities Litigation Section, Washington, DC, for appellees.

Randal Alonzo Mangham, Office of Randal Alonzo Mangham, Atlanta, GA, Dennis D. Parker, Maya Wiley, NAACP Legal Defense and Educational Fund, Inc., New York City, David F. Walbert, Walbert & Hermann, Atlanta, GA, for Richmond Hill, et al.

Robert Lee Todd, IV, Office of Robert L. Todd, IV, Greenville, GA, David H. Bedingfield, Office of David H. Bedingfield, Atlanta, GA, for Meriwether Co. Bd. of Educ.

Marie K. McElderry, Jessica Dunsay Silver, James P. Turner, Acting Asst. Atty. Gen., U.S. Dept. of Justice, Washington, DC, for U.S.

Kathryn L. Allen, Sr. Asst. Atty. Gen., Atlanta, GA, for State of Ga.

Danny Lee, Greenville, GA, for Meriwether Co.

Larry Hugh Chesin, Kirwan Goger Chesin & Parks, Alan Leroy Parks, Jr., Christine Allamanno, Atlanta, GA, for appellants.

Before KRAVITCH and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Robert Dorman, Coleman Bass and Ron Jackson appeal the order of the United States District Court for the Northern District of Georgia denying their motion to intervene as a matter of right in this ongoing school desegregation case. For the reasons stated below, we hold that the district court was correct in denying the motion and dismiss the appeal.

1. After an exhaustive search of the record before us on appeal, we have been unable to locate a copy of this order. All parties to this appeal agree, however, that such an order was entered by the district court and we accept this fact as a stipulation of the parties.

## I. BACKGROUND

This case commenced on August 1, 1969, when the United States filed suit against the State of Georgia and eighty-one public school districts within the State, including the Meriwether County School District, seeking to desegregate the schools in those districts. In 1970, certain individuals representing a class of black children eligible to attend Meriwether County schools were allowed to intervene as plaintiffs. Afterwards, in 1973, the United States District Court for the Northern District of Georgia entered a permanent injunction restraining the Meriwether County Board of Education ("the Board"), along with other school boards, from taking any action which would perpetuate the segregation of students or faculty by or within the schools on the basis of race, color or national origin.[1] The court placed the case on its inactive docket in 1979.

In 1986, the Board adopted a five-year facilities plan, which proposed the construction of a single consolidated high school to replace the three then existing high schools in Woodbury, Manchester and Greenville. The State approved the plan and allocated approximately six million five hundred thousand dollars to the Board for this purpose. By 1988, however, the composition of the Board had changed and the new Board voted to drop the consolidation plan. The State then informed the Board that it would distribute the money earmarked for the project to other school districts if construction did not begin by October 1989.

On January 22, 1988, the plaintiff-intervenors petitioned the district court to reactivate the case instituted in 1969. They alleged that the Board had failed to comply with the 1973 injunction, in part, by permitting the intra and inter-district transfer of white students to Manchester High School. The court granted the petition on August 29, 1988, and allowed additional individuals to intervene as plaintiffs. On October 16, 1989, the United States filed a motion to enforce the 1973 injunction, which echoed the plain-

tiff-intervenors' assertions concerning the intra and inter-district transfers. It also alleged that Woodbury High and Greenville High, both with mostly black student populations, were physically inferior to Manchester High, which was predominantly white, and offered fewer educational opportunities to the students of those two schools. The government claimed further that the Board's abandonment of the consolidation plan had impeded desegregation of the schools. On November 13, 1989, the district court ordered the State to continue to hold the funds set aside to the Board pending a resolution on the merits of the issues raised in the motion to enforce the 1973 injunction.

At a subsequent bench trial held in 1990, the Board maintained that any segregation that remained in the school district was the product of residential and demographic patterns over which it had no control. It also contended that a consolidated high school would result in further segregation because white students would abandon the one public high school in favor of private schools. After hearing final argument, the court stated that any plan it might later order to be implemented would not be based on whether one high school would be superior to more than one. The court stressed that instead, its decision must turn on whether a course of action put into effect by the Board at its direction would "ensure that a segregated system is not maintained or returned to." (R12–98). With this concern in mind, the court ordered the closure of Woodbury High,[2] the equalization of the curriculum of all the schools in the County and that teaching and staff assignments be brought into balance, as closely as possible, with the racial makeup of the County. It also halted all intra-district transfers as well as new inter-district transfers, but ordered the Board to make available a majority-to-minority transfer program. The case remained open for further developments not relevant to this appeal.

After another election in November 1992, a new Board came into power and in January 1993, this most recently elected body voted to pursue the previously proposed consolidation plan. Shortly thereafter, upon the joint motion of the Board, the State, the plaintiff-intervenors and the federal government, the district court directed the State to release the funds held in its custody to the Board to begin construction of the new high school. Several days later the appellants, who are members of a civic group called "Citizens for Community Schools of Meriwether County,"[3] moved to intervene as defendants and to enjoin the distribution of the money to the school district.

In a memorandum of law in support of the motion to intervene the appellants argued that the new Board, weary of the continuing litigation, had caved in to the government's demand for a consolidated high school and no longer adequately represented the interests of those citizens of Meriwether County opposed to the plan. After hearing oral argument, the district court found, *inter alia*, that (1) the application for intervention was timely; (2) the appellants' concern in the case consisted solely of their disagreement with the current Board over the proposal to build one high school; (3) their political motivation failed to raise a constitutional issue for resolution by the court; and (4) the legal and educational interests at stake were adequately represented by the existing parties. (*See* R14 at 28–31). In a written order entered after the hearing, the court reiterated that the intervenors sought only to represent the interests of those persons who objected to the construction of a consolidated high school and that such a decision was a political matter for the citizens of Meriwether County, rather than a question to be resolved by the federal courts. The court observed that the electorate of the school district had expressed its desire to be represented by the current Board and that it was improper for those who lost in the election to advance their political agenda in this action as inter-

---

2. With the closing of Woodbury High, the students within its district became eligible to attend Manchester High.

3. The group describes itself as "an association of like-minded people that want[s] to keep community schools in the towns of Meriwether County." (R1–106–2).

venors.[4] The court, therefore, denied the motion to intervene and treated as moot the request for injunctive relief.[5] This appeal followed.

## II. DISCUSSION

The appellants urge that the district court erred by denying their motion to intervene as a matter of right under Fed.R.Civ.P. 24(a)(2).[6] At the core of their argument is the contention that Meriwether County has eliminated the vestiges of *de jure* segregation and that implementation of the consolidation plan will result in resegregation due to white flight from the public school system. They assert, therefore, that the issue here is one of constitutional, rather than political dimension. They describe the Board's change of position in this case as "sudden" and "inexplicable" and claim a right to intervene because that body, which once adequately represented their interest in a two high school system, no longer advocates that point of view.

 We note initially that the various positions taken by the Board during the course of this litigation, first in favor of consolidation, then against it, then in favor once more, can be easily traced to its changing composition. As the district court indicated, the voters of the County have expressed, through their duly elected representatives on the Board, their fluctuating views with re-

spect to the desirability of operating a consolidated high school. One of the ultimate considerations in a desegregation case is that the basic administration of a school district, such as the number and location of schools, should be left to local authorities and the political process. The Supreme Court has long observed that

"local autonomy of school districts is a vital national tradition." Returning schools to the control of local authorities at the earliest practicable date is essential to restore their true accountability in our governmental system. When the school district and all state entities participating with it in operating the schools make decisions in the absence of judicial supervision, they can be held accountable to the citizenry, to the political process, and to the courts in the ordinary course.

*Freeman v. Pitts*, 503 U.S. ——, ——, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108, 134 (1992) (quoting *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 410, 97 S.Ct. 2766, 2770, 53 L.Ed.2d 851, 857 (1977) (subsequent history omitted)).

Nevertheless, a school board that is properly subject to continuing court supervision may be required to relinquish its political autonomy to the extent that its decisions are shown to adversely impact the objective of alleviating the unconstitutional conditions that justified the court's initial intervention.[7]

---

**4.** The record reflects that the appellant, Coleman Bass, is the former chairman of the Board that had opposed the consolidation plan.

**5.** The appellants indicate in their reply brief that they have since obtained an order in the Fulton County Superior Court restraining the Board from using the money set aside for construction until such time as it complies with the provisions of O.C.G.A. § 20-2-260, which mandates, *inter alia*, that a school board hold at least two public hearings to provide an opportunity for full discussion of a consolidation plan. *See id.* § 20-2-260(k.1)(1).

**6.** In the district court the appellants designated their motion to intervene as falling within the purview of Fed.R.Civ.P. 24(a), which governs intervention as a matter of right, and Fed.R.Civ.P. 24(b), which deals with permissive intervention. On appeal they confine their arguments to the issue of intervention as of right under Rule 24(a)(2). We therefore consider as abandoned any claim they may have had with respect to permissive intervention. *See Securities Groups v.*

*Barnett (In re Monetary Group)*, 2 F.3d 1098, 1103 n. 11 (11th Cir.1993). However, if we were to reach the issue of permissive intervention we would hold that there was no abuse of discretion on the record before us in the district court's denial of the motion. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.1989) (denial of Rule 24(b) motion is reviewed for abuse of discretion).

**7.** For example, this court sitting en banc recently let stand, by an equally divided vote, the order of the United States District Court for the Middle District of Alabama, which prohibited the closing of the only integrated high school in Macon County, Alabama, as part of a consolidation plan, where the student population of the resulting consolidated high school would be at least 94% black without white flight. *See Lee v. Macon County Bd. of Educ.*, 995 F.2d 184 (11th Cir. 1993) (en banc). *Lee* provides no assistance to us in this appeal because it did not concern the propriety of a motion to intervene. Also, an affirmance by an equally divided court has no

In the present case, however, the merit of the appellants' contentions that the school district has achieved unitary status and that consolidation would result in resegregation are not properly before us.[8] The only issue before us is a narrow one: whether the appellants were entitled to intervene in the case as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2).

Our authority to review the district court's denial of the motion to intervene is derived from this circuit's "anomalous rule." *See EEOC v. Eastern Airlines, Inc.,* 736 F.2d 635, 637 (11th Cir.1984); *FSLIC v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 214 (11th Cir.1993). Under this rule, we have provisional jurisdiction to decide whether the district court was correct in determining that the appellants were not entitled to intervene. If we agree with the district court, our jurisdiction evaporates because the proper denial of a motion to intervene is not a final appealable order. Conversely, if we determine that the district court erred, we retain jurisdiction and must reverse. Either way, we must first decide whether the motion to intervene was properly denied. *Eastern Airlines, Inc.,* 736 F.2d at 637; *Falls Chase Special Taxing Dist.,* 983 F.2d at 214.

A party who seeks to intervene as a matter of right under Rule 24(a)(2) must establish, among other things, that he has a legally protectable interest in the litigation which is inadequately represented by the existing parties to the lawsuit.[9] *Chiles v. Thornburgh,* 865 F.2d 1197, 1212–13 (11th Cir.1989). Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion. *Falls Chase Special Taxing Dist.,* 983 F.2d at 215. "[W]e review the denial of intervention as a matter of right for error in the application of the rule." *Id.*

The appellants claim to have raised a cognizable constitutional interest in this litigation on the basis of what they describe as abundant evidence before the district court showing that consolidation would further segregate the school district. They assert that the racial composition of the resulting student body would be 80% black and 20% white.[10] They fail to cite, however, any portion of the evidence introduced in the district court to support such a statement. Instead, they rely on a proposed finding of fact submitted by the Board after the 1990 hearing. That proposed finding of fact states that "the evidence is undisputed that a great bulk of Manchester area students would stay in Manchester if the school leaves [and presumably attend a private school], so that the racial composition of the one high school would be approximately 20 percent white and 80 percent black." (R1–65 at ¶ 247). Paragraph 247 refers to the testimony of the appellant, Coleman Bass, at the 1990 trial, given during his tenure as chairman of the Board that opposed the consolidation plan.

---

precedential value. *See Hertz v. Woodman,* 218 U.S. 205, 213–14, 30 S.Ct. 621, 622–23, 54 L.Ed. 1001, 1005 (1910).

8. Ironically, if the appellants were correct that the vestiges of unconstitutional *de jure* segregation have been eliminated in Meriwether County, the district court would be justified in withdrawing from the case and in restoring to state and local authorities control of the school district, a result they seek to avoid so long as the Board advocates consolidation. *See Freeman v. Pitts,* 503 U.S. at ———— ————, 112 S.Ct. at 1443–46, 118 L.Ed.2d at 131–35. We voice no opinion on whether such a course of action would be appropriate at this time. We point out, however, that:

Just as a court has the obligation at the outset of a desegregation decree to structure a plan so that all available resources of the court are directed to comprehensive supervision of its decree, so too must a court provide an orderly means for withdrawing from control when it is

shown that the school district has attained the requisite degree of compliance.
*Id.* at ————, 112 S.Ct. at 1445, 118 L.Ed.2d at 134.

9. Rule 24(a)(2) provides as follows:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

10. During the 1992–93 school year, enrollment at Manchester High was 54% black and 46% white. The racial makeup of Greenville High was 76% black and 24% white.

When asked whether he had an opinion with respect to the projected size of a consolidated high school, Bass responded:

A. Yes, sir, I do. We would lose students in a one-high-school plan, and, certainly, I have given this some thought, and I have even made some calculations. I think in the [grades] 9 through 12, we could lose possibly 300 students.

Q. All right. What percentage black and white would you expect that one school to be in that situation, if it's built up near Greenville?

A. I would say when it started, it would be somewhere between 75 to 80 percent black.

(R10 at 1669–70). The remaining testimony mentioned in the appellants' brief on appeal relates to alleged advantages of operating smaller local schools as opposed to a larger single school, not the projected racial make-up of a consolidated school. The appellants offered no evidence in support of their contentions at the hearing on their motion to intervene.

Implicit in the district court's finding that the appellants' only interest in this case is their political disagreement with the Board, which they should not be allowed to advance as intervenors, is a determination that they have no legally protectable interest in this litigation. Although they urge that their interest is in enforcing the district court's decree forbidding the Board from taking any action that would tend to segregate students or faculty by or within the schools, it is evident that their overriding purpose is in maintaining local community schools. Their allegation that consolidation would have a detrimental impact on integration in Meriwether County is substantiated by nothing more than Bass's speculative opinion at the 1990 trial. It goes without saying that the proposed finding of fact upon which they rely does not constitute evidence.

An interest in maintaining local community schools, without any showing that consolida-tion would hamper the avowed goal of eliminating the vestiges of past discrimination, fails to constitute a legally cognizable interest in a school desegregation case. As the government argued at the hearing on the motion to intervene, the appellants:

failed to demonstrate a sufficient interest in the subject matter of this action. They argue that their primary interest is in insuring an integrated school system. The movants fail, however, to provide any factual or legal support for their allegations that a single consolidated high school attended by all of the district's high school students is in any way inconsistent with the operation of a unitary system. Their interest is a disagreement with the school board action. It does not rise to the level entitling the movants to intervene simply because of this disagreement.

(R14 at 18–19).

■ Moreover, we find that the current parties to the litigation adequately represent the appellants' claimed interest in enforcing the 1973 injunction. We "presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Falls Chase Special Taxing Dist.*, 983 F.2d at 215. *See also United States v. South Bend Community School Corp.*, 692 F.2d 623, 627 (7th Cir.1982) (a school board, which is charged by law with representing the interests of the students, is presumed to adequately represent those interests absent a showing of gross negligence or bad faith). Here, the ultimate purpose is to eliminate the detrimental impact upon students caused by segregation. There is absolutely no evidence in the record before us of gross negligence or bad faith on the part of the current Board in pursuing this goal. We conclude, therefore, that the district court properly denied the appellants' motion to intervene.[11] In view of this finding, we need not address the district court's denial of injunctive relief.

---

11. We note that the appellants will have an opportunity to voice their concerns regarding con-solidation at the public hearings required by Ga. Code Ann. § 20-2-260(k.1)(1).

### III. CONCLUSION

Because the district court properly denied the appellants' motion to intervene, we DISMISS the appeal for lack of jurisdiction.