[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  11-14828
Non-Argument Calendar
_____

D.C. Docket No. 3:09-cv-01214-MMH-JBT


SANDRA P. GANDY, as Personal Representative
of the Estate of Antonio Whetstone,

Plaintiff-Appellant,

versus

J. HARRELL REID, in his Official Capacity as the
Sheriff of the Hamilton County Sheriff's Office,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 31, 2013)

Before MARCUS, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Sandra Gandy, as personal representative of the estate of Antonio

Whetstone, appeals the district court's grant of summary judgment in favor of Hamilton County Sheriff J. Harrell Reid, on her municipal liability claim under 42 U.S.C. § 1983. After review, we affirm.

## A. The Complaint

In the early morning hours of December 11, 2005, Officer Bobby Boatwright of the Hamilton County Sheriff's Office shot and killed Antonio Whetstone during an encounter at a hotel in Jennings, Florida. Ms. Gandy, Antonio's mother, was appointed representative of her son's estate. Through counsel, she filed a one-count complaint in December of 2009 against Sheriff Reid under § 1983.

The complaint alleged that Officer Boatwright had responded to a 911 call from the hotel room where Mr. Whetstone was staying with Denise Harrington. Ms. Harrington, who had placed the 911 call, reported that someone was trying to break into her room. When Officer Boatwright arrived, Ms. Harrington walked out of the room. At the time Officer Boatwright entered the room, Mr. Whetstone and Devita Daniels—the mother of Mr. Whetstone's child—were talking in the bathroom. They were not armed or involved in any criminal activity. Officer Boatwright, armed with a Taser and handgun, pushed open the bathroom door and knocked Mr. Whetstone to the ground. Officer Boatwright then used his Taser on Mr. Whetstone, knocking him to the ground a second time, and followed up by

2

shooting him several times. After killing Mr. Whetstone, Officer Boatwright retrieved a handgun from his patrol car and planted it on Mr. Whetstone. There was no fingerprint evidence or gun powder residue showing that Mr. Whetstone had ever handled the handgun.

Ms. Gandy did not sue Officer Boatwright. As noted above, she sued only Sheriff Reid in his official capacity, alleging that the police officers of the Hamilton County Sheriff's Office "participated in a widespread custom and practice or had an unofficial policy of" (1) "falsely accusing unarmed citizens of posing a threat of death or serious bodily injury toward the police officer to justify using deadly force against the citizen[,]" (2) planting guns at the scene of police shootings to justify the use of deadly force against unarmed citizens, and (3) giving false statements to investigators to justify the use of deadly force against unarmed citizens.

## B. The Withdrawal of Ms. Gandy's Attorney

On January 31, 2011, the last day of the discovery period, Ms. Gandy's attorney filed an unopposed motion to withdraw, asserting that a conflict of interest prevented him from continuing to represent Ms. Gandy. On February 1, 2011, the magistrate judge issued an order requiring Ms. Gandy to respond to the motion to withdraw by February 18, 2011. The magistrate judge indicated in his order that it was unlikely that Ms. Gandy, as the representative of her son's estate, would be

able to proceed pro se under *Reshard v. Britt,* 839 F.2d 1499 (11th Cir. 1988) (en banc).[1]   As required by the magistrate judge, Ms. Gandy's attorney mailed Ms. Gandy a copy of the order.  Ms. Gandy, however, never responded to the motion to withdraw, and on February 22, 2011, the magistrate judge granted the motion and gave Ms. Gandy until March 11, 2011, to retain new counsel.

### C. Sheriff Reid's Motion for Summary Judgment & Ms. Gandy's Motion for Appointment of Counsel

On the same day, Sheriff Reid filed a motion for summary judgment, arguing that there was no liability under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), and its progeny.  The motion was accompanied by two exhibits.

The first exhibit was part of the manual for the Hamilton County Sheriff's Office.  Effective January 3, 1989, the manual provided that "[d]eadly force may not be used by a law enforcement officer unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or the general public."

The second exhibit was Sheriff Reid's affidavit.  Sheriff Reid asserted that he had been the sheriff of Hamilton County for the last 23 years; that on the date of the shooting of Mr. Whetstone the deadly force policy described above was in

---

[1] In *Reshard* the Eleventh Circuit divided equally on whether the personal representative of an estate could litigate claims on behalf of the estate *pro se*.  By operation of law that equally divided vote resulted in an affirmance of the district court's dismissal of the action, which had been based on the understanding that a personal representative could only litigate such claims through counsel.  As an affirmance by an equally divided court, *Reshard* "has no precedential value." *United States v. Georgia,* 19 F.3d 1388, 1392 n.7 (11th Cir. 1994).

place; that there had been no fatal shootings involving officers of the Sheriff's Department in the 17 years prior to December of 2005 and none since then; that there had been two justified non-fatal shootings (one in 1995 and the other in 1998) involving armed suspects; that there had been no incidents involving the unjustified use of deadly force during his 23 years as sheriff; that there had been no citizen complaints in those 23 years with respect to the alleged unjustified use of deadly force or the planting of weapons at the scenes of police shootings; and that the Sheriff's Office did not have the customs, policies, or practices alleged in the complaint.[2]

Two weeks later, on March 8, 2011, Ms. Gandy filed a motion requesting the appointment of counsel. She asserted, among other things, that she had paid her attorney $5,000 in 2009, and that he had settled a claim arising from her son's death against a life insurance company for an undisclosed sum. She also stated that her attorney had suggested to her that, if she dropped the allegation that a gun had been planted by Officer Boatwright, Sheriff Reid "would settle out of court." Nevertheless, Sheriff Reid would not settle out of court. Her attorney said he was withdrawing because the case "would put his license on the line," and that the district court would "ask for a mistrial" because the Sheriff's Office had not had a

---

[2] The clerk sent Ms. Gandy a summary judgment notice on February 23, 2011, informing her that Sheriff Reid's motion would be taken under advisement in 21 days and that if she wanted to oppose the motion she had to respond to it and had to submit evidence (affidavits, depositions, exhibits, etc.) to controvert the material facts asserted by Sheriff Reid.

5

shooting in 30 years.

On March 9, 2011, the magistrate judge denied the request for appointment of counsel without prejudice because Ms. Gandy had not provided sufficient justification for such relief. The judge informed Ms. Gandy that there is no constitutional right to counsel in a civil case, *see Bass v. Perrin,* 170 F.3d 1312, 1320 (11th Cir. 1999), and that counsel should only be appointed in cases involving "exceptional circumstances," *see Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992). The judge stayed all deadlines until May 9, 2011, so that Ms. Gandy could obtain new counsel or file a renewed motion for appointment of counsel showing that there were exceptional circumstances, that she had taken steps to try to hire counsel, and that the estate could not afford to obtain counsel. Finally, the judge cancelled the scheduled pretrial conference and the trial.

Ms. Gandy moved for reconsideration on April 18, 2011, arguing that she had contacted three law firms, all of whom had declined to take the case; that her annual income was less than $15,000; and that the estate could not afford to hire an attorney because "there is no money available." Sheriff Reid opposed the motion for reconsideration, asserting that Ms. Gandy had failed to show "exceptional circumstances."

The magistrate judge denied the motion for reconsideration. Because *Reshard* did not constitute binding precedent, however, he allowed Ms. Gandy to

6

file a *pro se* response by July 18, 2011, to Sheriff Reid's motion for summary judgment.

Ms. Gandy filed her summary judgment response on June 24, 2011. She asserted new theories of liability (failure to train and negligent hiring) and focused on her grief over the loss of her son and the circumstances surrounding the shooting. The only attachments to her response were (a) an excerpt of a letter from an attorney opining that the police had fabricated reports of the shooting, and (b) photos and diagrams from the medical examiner of Mr. Whetstone's wounds. Ms. Gandy did not present any evidence indicating that the Sheriff's Office had the customs, policies, or practices alleged in the complaint.

## D. The District Court's Grant of Summary Judgment

The district court granted Sheriff Reid's motion for summary judgment. It concluded that under § 1983 Ms. Gandy could not prevail pursuant to a respondeat superior theory, and that Ms. Gandy had failed to provide evidence of the alleged customs, policies, and practices alleged in the complaint. It also noted that Ms. Gandy's new theories of liability (i.e., failure to train and negligent hiring)—as asserted in her summary judgment response—were not properly before the court and were in any event devoid of merit.

## E. Ms. Gandy's Arguments on Appeal

On appeal, Ms. Gandy, proceeding *pro se*, argues that the district court only

7

looked at Sheriff Reid's version of events, that Officer Boatwright lied about the shooting, and that she can prove that her son was murdered because Officer Boatwright admitted in a deposition that his life was not in danger when he encountered Mr. Whetstone.  She also contends that the district court cancelled the pretrial conference and the trial, thereby depriving her of an opportunity to present witnesses and evidence, and repeats her conclusory assertions about the existence of the customs, policies, and practices alleged in the complaint.

We review the district court's grant of summary judgment under Rule 56 *de novo*, viewing the evidence in the light most favorable to Ms. Gandy.  *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).  Although we sympathize with Ms. Gandy's loss, there is no legal basis for reversal of the district court's grant of summary judgment to Sheriff Reid.

First, the only relevant evidence that the district court had before it with respect to municipal liability under § 1983 was the deadly force policy of the Sheriff's Office and the affidavit of Sheriff Reid.  That evidence—which Ms. Gandy did not dispute with evidence of her own—showed that there was no unconstitutional custom, policy, or practice that was the moving force behind the shooting death of Mr. Whetstone.  *See Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997) (a "policy is a decision that is officially adopted by the municipality" and a "custom is a practice that is so settled and permanent that it

8

takes on the force of law"). The fact that Mr. Whetstone's shooting might have been unjustified and unlawful does not subject Sheriff Reid to liability in his official capacity under § 1983. *See Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403–04 (1997) (municipal liability claim cannot rest on respondeat superior theory).

Second, the district court gave Ms. Gandy adequate time to respond to the motion for summary judgment. The clerk provided Ms. Gandy—who had counsel during the entire discovery period—with the requisite Rule 56 notice for *pro se* litigants, informing her that she had to present evidence to counter Sheriff Reid's version of material facts. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Ms. Gandy, moreover, had four months to respond to the summary judgment motion, and the cancellation of the scheduled pretrial conference and the trial did not deprive Ms. Gandy of her right or ability to respond to the motion.

The district court's grant of summary judgment to Sheriff Reid is affirmed.

**AFFIRMED.**