**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,**

v.

**G–K–G, INCORPORATED, Bernard Gassin, Hattori Corporation of America, et al., Defendants–Appellees.**

**William BLUMENTHAL and Equal Employment Opportunity Commission, Plaintiffs–Appellees,**

v.

**G–K–G, INCORPORATED, Bernard Gassin, Hattori Corporation of America, et al., Defendants–Appellants.**

**Nos. 93–2275, 93–2386 and 93–3776.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1994.

Decided Nov. 4, 1994.

Gail S. Coleman (argued), E.E.O.C., Office of General Counsel, Washington, DC, Jean P. Kamp, Mary B. Manzo, E.E.O.C., Chicago, IL, for E.E.O.C.

Philip C. Stahl (argued), Lynn H. Murray, Nancy H. Wilder, Susan L. Goldfine, Grippo & Elden, Chicago, IL, for G–K–G, Inc., Bernard Gassin, Hattori Corp. of America, in Nos. 93–2275, 93–2386.

Philip C. Stahl, Lynn H. Murray, Nancy H. Wilder, Susan L. Goldfine, Grippo & Elden, Chicago, IL, for Seiko Time Corp., Seiko Corp. of America, in No. 93–2275.

Mark L. Shapiro (argued), Robert S. Letchinger, Rudnick & Wolfe, Chicago, IL, for William Blumenthal, in No. 93–2386.

Jay G. Swardenski, Matkov, Salzman, Madoff & Gunn, Philip C. Stahl, Lynn H. Murray, Nancy H. Wilder, Susan L. Goldfine, Grippo & Elden, Chicago, IL, for Seiko Time Corp., Seiko Corp. of America, in No. 93–2386.

Mark L. Shapiro (argued), Bruce C. Nelson, Rudnick & Wolfe, Chicago, IL, for William Blumenthal, in No. 93–3776.

Philip C. Stahl (argued), Lynn H. Murray, Carolyn F. McNiven, Grippo & Elden, Chicago, IL, for G–K–G, Inc., Bernard Gassin, Hattori Corp. of America, in No. 93–3776.

Jay G. Swardenski, Matkov, Salzman, Madoff & Gunn, Philip C. Stahl, Lynn H. Murray, Carolyn F. McNiven, Grippo & Elden, Chicago, IL, for Seiko Time Corp., in No. 93–3776.

Jay G. Swardenski, Bret A. Rappaport, Schwartz, Cooper, Greenberger & Krauss, Philip C. Stahl, Lynn H. Murray, Carolyn F. McNiven, Grippo & Elden, Chicago, IL, for Seiko Corp. of America in No. 93–3776.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

William Blumenthal was employed as a salesman by G–K–G, Inc., a wholesale distributor of Seiko watches. Fired one month before turning 70, he brought suit against G–K–G under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* While the suit was pending, G–K–G sold all its assets to Seiko, which was added as a defendant; and, before trial, the district judge ruled that Seiko was, as a matter of law, G–K–G's successor for purposes of liability under the age-discrimination law. A jury brought in a verdict for Blumenthal, awarding him $343,691 in back pay which the judge doubled because the jury had found that the defendants' violation of the law was willful. Later the judge awarded Blumenthal more than $370,000 in costs and attorney's fees, but the appeal from that award has been stayed to enable the judge to rule on a request for additional fees.

A month after Blumenthal filed his suit, the Equal Employment Opportunity Commission filed a largely identical suit against G–K–G but with one additional charge—that G–K–G's pension and profit-sharing plan discriminated against employees aged 70 or older. The suits were consolidated. After the Commission dropped its challenge to the pension and profit-sharing plan, and before the trial began, the district judge dismissed its suit as duplicative of Blumenthal's. The Commission appeals from this dismissal, and the defendants from the judgment against them in Blumenthal's suit. We begin with the Commission's appeal.

The Commission's brief is full of sonorous rhetoric about its supposedly dominant role in the enforcement of the age-discrimination law, its paramount responsibility to eradicate age discrimination, its superior perspective, its commitment to obtaining the most satisfactory overall relief, the danger that an individual plaintiff with his narrow interests may settle prematurely, and so on in that vein. There are many reasons not to take these claims seriously. To begin with, the Commission is a party to only a small percentage of the age-discrimination cases that are filed. The vast majority are brought by individuals with no participation by the Commission. At argument we asked the Commission's counsel for a memorandum on what percentage of cases is brought by the Commission. The memorandum reveals that the Commission does not keep such statistics and is not aware of any institution that does. It

has no empirical basis for its claim of paramountcy and apparently no interest in creating one.

Most cases under the Age Discrimination in Employment Act, moreover, including the present one, are brought by well-paid management-level personnel or commissioned salesmen, who are quite capable of instituting and conducting litigation without the aid of the taxpayer. The broader relief that the Commission initially sought on behalf of Blumenthal concerned G–K–G's pension and profit-sharing plans, and the participants in such plans tend to be affluent rather than poor or otherwise marginalized employees. A further reason for wonderment that the Commission should want to elbow its way into a case in which the employee who is complaining of age discrimination has brought his own suit is that the chances of a plaintiff's obtaining a satisfactory settlement are likely to be reduced rather than increased by the presence of the Commission as a coplaintiff. The Commission can derail settlement negotiations by insisting on pressing on with its own duplicative suit, so that the employer will gain little or nothing by settling with the employee. *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir.1987). The effect when this happens is to subordinate the interests of the particular employee to the Commission's enforcement strategy. The supplemental memorandum includes a ten-year-old description of that strategy that is couched in meaningless generalities and contains no specific reference to age discrimination.

The Commission's insistence on remaining a plaintiff in a case such as this where it seeks the identical relief as the well-represented individual plaintiff seems especially pointless. It is not as if Blumenthal were attempting to "sell out" future age-discrimination plaintiffs by seeking a judgment that would give him what he wants without establishing any principle useful to future plaintiffs; for the Commission seeks no greater relief, and could adequately protect its interest in the development of legal doctrine by filing an amicus brief, as it has done in other cases, such as *Zabielski v. Montgomery Ward & Co.*, 919 F.2d 1276, 1279–80 (7th

Cir.1990). It is not as if Blumenthal's lawyer, feeling outgunned by mighty Seiko, invited the Commission to file suit; he did not, and is politely indifferent to the Commission's appeal from the dismissal. Of course it is not for judges to tell an administrative agency how to allocate its resources. But we are greatly surprised to find this particular agency, which has long complained of being understaffed and has long been criticized for delay, see, e.g., *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 364, 370, 97 S.Ct. 2447, 2453, 2456, 53 L.Ed.2d 402 (1977); *Cannon v. University of Health Sciences*, 710 F.2d 351, 359 (7th Cir.1983); Patrick Lee, "EEOC: The Mill Grinds Slowly: At Understaffed and Underbudgeted Agencies, the Backlog of Cases Continues to Grow," *Los Angeles Times*, May 16, 1994, § 2, p. 5, acting as if it were bounteously endowed. How otherwise could duplicating the efforts of highly competent private counsel be thought an efficient use of the agency's appropriation? In response to our query whether the Commission has any published or publicly available criteria for determining whether to sue when a parallel suit has been brought by the employee alleged to have been discriminated against on grounds of age, the supplemental memorandum reports that the Commission has no such criteria.

■ All this said, we agree with the Commission, and with the only other appellate decision to address the issue, *EEOC v. Wackenhut Corp.*, 939 F.2d 241 (5th Cir.1991), that the district judge erred in dismissing its suit. Not only has the Commission an unequivocal statutory right to sue to enforce the age-discrimination law, but the right of the individual employee to bring such a suit "shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee." 29 U.S.C. § 626(c)(1); see *EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1505–06 (9th Cir.1990). Blumenthal's suit was not affected, as the district judge noted, 737 F.Supp. 493, 496 (N.D.Ill. 1990), because it was brought before the Commission's suit. *EEOC v. Eastern Airlines, Inc.*, 736 F.2d 635, 640–41 (11th Cir. 1984); *Burns v. Equitable Life Assurance Soc'y*, 696 F.2d 21 (2d Cir.1982). Neverthe-

less the provision we have quoted shows that the Commission was meant to have the whip hand in the enforcement of the age-discrimination law, just as it asserts. *EEOC v. Pan American World Airways, Inc., supra,* 897 F.2d at 1505–06; *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977). It is not clear *why* Congress gave the Commission the whip hand. The provision in question, along with most of the other remedial and procedural provisions of the age-discrimination law, was taken from the Fair Labor Standards Act. *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 283 (7th Cir.1993); *Burns v. Equitable Life Assurance Soc'y, supra.* The small stakes in most minimum-wage and maximum-hour cases, coupled with the "victimless" nature of the offense (working for less than the minimum wage or waiving overtime pay is a voluntary undertaking), may make the individual worker an unreliable enforcer. *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 302, 105 S.Ct. 1953, 1962, 85 L.Ed.2d 278 (1985); *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 306 (7th Cir.1986). This is not the case with age discrimination, as courts have understood in holding that age-discrimination claims, unlike claims under the Fair Labor Standards Act, can be waived, e.g., *Runyan v. National Cash Register Corp.,* 787 F.2d 1039 (6th Cir.1986) (en banc), albeit with some limitations. 29 U.S.C. § 626(f); *Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679, 682 (7th Cir.1993).

■ Although the EEOC's suit should not have been dismissed, the extent to which the Commission may participate actively in the trial and pretrial of a particular case previously filed and actively being litigated by the aggrieved employee (or employees) is a matter for the district court to decide in the exercise of its discretion to manage litigation in an efficient and expeditious fashion. *EEOC v. Wackenhut Corp., supra,* 939 F.2d at 244; *Burns v. Equitable Life Assurance Soc'y, supra,* 696 F.2d at 24. The breadth of the district court's managerial discretion, on which see *Northern Indiana Public Service Co. v. Carbon County Coal Co.,* 799 F.2d 265, 269 (7th Cir.1986), precludes any suggestion

that the EEOC has an absolute right to redepose already deposed witnesses, to examine or cross-examine all the trial witnesses, to make lengthy opening and closing arguments, or otherwise to duplicate the efforts of the employee's counsel as if the EEOC were the only plaintiff. It is not a privileged litigant, and it is therefore subject to the usual powers of the trial judge— conferred for example by Fed.R.Civ.P. 42(a)—to prevent, through consolidation or other means, unnecessary duplication of effort in related cases. *EEOC v. North Hills Passavant Hospital,* 544 F.2d 664, 670, 672 (3d Cir.1976).

■ The defendants, to whose appeal we turn, devote most of their efforts to trying to show that no rational jury could have brought in a verdict against them. That is the applicable standard of review. *Price v. Marshall Erdman & Associates,* 966 F.2d 320, 323 (7th Cir.1992). We reject the defendants' suggestion that a stricter scrutiny of jury verdicts is appropriate in age-discrimination than in other cases because juries tend—or so the defendants argue—to be especially sympathetic to the plaintiffs in those cases. Cf. *Wassell v. Adams,* 865 F.2d 849, 856 (7th Cir.1989); *Bartek v. Urban Development Authority,* 882 F.2d 739, 743–44 (3d Cir.1989). The suggestion that the scope of appellate review should vary with the judges' assessment of the probable direction of jury bias has no basis in established law, and if a party wants us to innovate it had better give us a solider foundation than suspicion.

Blumenthal was hired by G–K–G in 1974 and received many awards from both his employer and Seiko throughout the period of his employment, which ended with his discharge in 1987. In 1985 he received a Seiko $2 Million Sales Club Award, and he received awards from G–K–G in the following two years, which included the year in which he was fired. Although the oldest of the six G–K–G salesmen in the Chicago area, Blumenthal, in most months, right up to the time he was fired, came closer to meeting his quota (or exceeded it by more) than any of the others.

When in 1987 G–K–G decided to reduce the number of its salesmen in the Chicago area to five, Benavides, the company's sales manager, together with the president, decided that Blumenthal would be the one to be let go. It was at about the same time that Benavides told another of the salesmen, "You can never tell what is going to happen.... For example, take [Blumenthal].... You never know what can happen.... God love him, he is a good guy.... His accounts love him and everything else, but I think he is tired, and I think the job is a little too much for him, and I think his accounts could use some younger blood, somebody like yourself ... to go in there and reexcite them about the product." Shortly before the axe fell on Blumenthal, another one of the six salesmen resigned unexpectedly, so that even including Blumenthal there were only five. Nevertheless the company went ahead and fired him, replacing him with a much younger man. The company never gave Blumenthal a reason why he had been fired, despite his repeated demands for some explanation; obviously it was not because the sales division was overstaffed. Nor had the company ever warned him that his performance was unsatisfactory, although it was the company's policy to attempt to correct an employee's deficiencies before firing him.

■ The motive behind the firing of Blumenthal is not entirely clear. There is no indication that the company saved money by it, which would be a lawful motive even though an employee's salary and fringe benefits tend to increase with his age, making age and compensation highly correlated. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125–26 (7th Cir.1994); *Hamilton v. Grocers Supply Co.,* 986 F.2d 97 (5th Cir.1993); see *Hazen Paper Co. v. Biggins,* —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); cf. *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 738 (7th Cir.1994). So far as appears, Blumenthal worked on a commission basis and was not paid at a higher rate than the other, younger salesmen. And he was fully vested in the company's pension and profit-sharing plan. His bosses may simply have thought that 70 is when people should retire, but of course that is a forbidden ground, now that the age-discrimination

law has (with immaterial exceptions) outlawed mandatory retirement at any age. People do age, regardless of what some of the most optimistic backers of the law may have thought. But they age at different rates, and there is no evidence that Blumenthal's energy, intelligence, or effectiveness as a wholesale salesman of jewelry was flagging.

■ There *was* evidence that Blumenthal was critical of G–K–G's management and disagreed with some of its policies, and that his successor had even greater sales than Blumenthal. The defendants asked the jury to infer from this evidence that the company did have grounds for firing Blumenthal and, even if it did not, that age was not a factor. The jury was not required to draw this inference. The proposition that if a worker is not perfect the motive for discharging him cannot possibly be an improper one is illogical. Few workers are perfect, and given the evidence that, all things considered, Blumenthal was the best of the six salesmen the jury was well within the bounds of reason in concluding that his imperfections were not the cause of his being fired. The defendants are off base in arguing that because the testimony of their officers that they did not fire Blumenthal because of his age was not contradicted directly, the jury had to accept it. The jury may have thought them liars. It is the prerogative of a jury or other trier of fact to disbelieve uncontradicted testimony unless other evidence shows that the testimony *must* be true. *Masciale v. United States,* 356 U.S. 386, 388, 78 S.Ct. 827, 828, 2 L.Ed.2d 859 (1958); *United States v. McClellan,* 868 F.2d 210, 216 (7th Cir.1989); *Branion v. Gramly,* 855 F.2d 1256, 1263 (7th Cir.1988); *United States ex rel. Jones v. DeRobertis,* 766 F.2d 270, 273 (7th Cir.1985); *United States v. Mora,* 994 F.2d 1129, 1137 (5th Cir.1993). Blumenthal could not, it is true, have gotten to the jury if his only "evidence" had been that the defendants' witnesses were not worthy of belief. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Roper Corp. v. NLRB,* 712 F.2d 306, 310 (7th Cir.1983); *Chauhan v. M. Alfieri Co.,* 897 F.2d 123, 127–28 (3d Cir.1990). That would have made it a no-evidence case, and such a

case a plaintiff must lose, because he has the burden of proof. But since the plaintiff did present evidence of age discrimination (such as the "God love him" statement by Benavides), he was entitled to ask the jury to disbelieve the self-serving contrary testimony of the people responsible for firing him.

The defendants also complain that the judge erred "by removing the prima facie case from the jury." The defendants wanted him to instruct the jury in the language of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and in particular to tell the jury that the plaintiff had to prove that he had been satisfying the legitimate expectations of the employer. Since the *McDonnell Douglas* standard was intended to make it easier for plaintiffs in discrimination cases to resist summary judgment, we find it curious that a defendant should be complaining about the failure to include the standard in the jury instructions. What is true, and is an adaptation of *McDonnell Douglas* to the trial setting from its original setting of summary judgment, is that a plaintiff who has withstood the defendant's motion for summary judgment, yet has not been able to obtain summary judgment for himself and must therefore go to trial, can ask the jury to infer discrimination from the defendant's failure to present a credible explanation for why it fired the plaintiff despite his satisfying the defendant's legitimate expectations, and replaced him with a member of a nonprotected group. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Troupe v. May Dept. Stores Co., supra,* 20 F.3d at 736. Blumenthal could have followed this route but did not, and a defendant has no right to insist that a theory of violation that the plaintiff did not advance be put to the jury. Blumenthal's theory of violation was a simple one, which did not rely on the *McDonnell Douglas* formula. It was that he was fired because Benavides wanted "younger blood." Blumenthal was prepared to prove by direct evidence (Benavides' statement, treated as an admission) that this was G–K–G's motive and to reinforce that evidence with proof that the defendants' ostensible reasons for firing him were unworthy of belief.

This was a permissible approach, properly presented to the jury, and it did not require Blumenthal to show that he met his employer's reasonable expectations. That showing would have been required had he had no evidence of what the motive for firing him was and therefore had to fall back on *McDonnell Douglas.* But he was prepared to prove, as we have said, that he was fired because he was considered too old. Even a worker who does not meet his employer's legitimate expectations is entitled to a remedy under the Age Discrimination in Employment Act if, despite his inadequacies, he would not have been fired had it not been for his age.

We consider next the question of successor liability, that is to say of Seiko's liability for G–K–G's violation of the Act. The defendants argue that the judge should not have granted summary judgment against them on that issue—should in fact have granted summary judgment in their favor—and also complain about the instruction the judge gave to the jury on Seiko's liability and about his refusal to let the jury see an indemnification agreement that Seiko had with G–K–G.

The purchaser of the assets, as distinct from the stock, of a corporation generally does not acquire the seller's liabilities, even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern. *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1424–26 (7th Cir.1993). Only if the sale is merely a step in a corporate reorganization designed to shift the liabilities to an empty shell will the creditors be allowed to go against the "purchaser." *Id.* at 1425. That is not this case. G–K–G has promised to indemnify Seiko for any liability that Seiko may be determined to have to Blumenthal and, more to the point, has retained sufficient assets to satisfy Blumenthal's judgment in full. There was nothing sneaky about the transaction, no effort to evade Blumenthal's claim.

Nevertheless, when a claim arising from a violation of federal rights is involved, the courts allow the plaintiff to go

against the purchaser of the violator's business even if it is a true sale and not a reorganization, provided that two conditions are satisfied. The first is that the successor had notice of the claim before the acquisition. Clearly that condition is satisfied here. The president of the Seiko subsidiary that bought the assets of G–K–G was informed prior to the purchase that an age-discrimination complaint was pending against G–K–G; and notice to the president of a company is notice to the company as a matter of law. *EEOC v. Vucitech,* 842 F.2d 936, 945 (7th Cir.1988); *In re Pubs, Inc.,* 618 F.2d 432, 438 (7th Cir.1980). The second condition is that there be substantial continuity in the operation of the business before and after the sale, and is satisfied if no major changes are made in that operation. *Upholsterers' International Union Pension Fund v. Artistic Furniture,* 920 F.2d 1323, 1327 (7th Cir.1990); *EEOC v. Vucitech,* 842 F.2d 936, 944–45 (7th Cir.1988).

The reason for this special federal common law doctrine of successor liability—this departure from the more limited approach of the common law generally—is a little elusive, especially in a case such as this in which the actual violator is fully answerable for the consequences of the violation. The doctrine originated in cases before the National Labor Relations Board. *Id.* at 944–45. Usually the primary relief sought in such cases is nonmonetary and can be effective only if directed against the workers' current employer. There would be a parallel if Blumenthal were seeking reinstatement, as he could get it only from Seiko, since G–K–G is out of business. He did seek reinstatement originally but he has dropped that claim. It is now a pure money case. Nevertheless the doctrine of substantial continuity is applied in such cases, see, e.g., *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740 (7th Cir.1985), and the defendants do not challenge that application. Their argument is that the elements of the doctrine are not present.

The first is, as we have seen. And so is the second. G–K–G was Seiko's distributor, and by purchasing G–K–G's assets Seiko vertically integrated forward. It retained most of G–K–G's personnel, including most of its management personnel and all its salesmen in the Chicago area, and did not institute major changes until a year after the acquisition. Those changes, moreover, dealt with aspects of the business, such as the storage of inventory, that are remote from the activities of the salesmen. If this is not a case of substantial continuity, we do not know what is. The district judge was right to grant summary judgment on the issue of successor liability.

But when he did so, the defendants, fearing that the jury might be prejudiced against a deep-pocket foreign company such as Seiko, asked him not to identify Seiko as a defendant. The judge refused, and instructed the jury that Seiko was liable as a matter of law for any violation of the age-discrimination law by G–K–G.

We do not think the presence of Seiko could properly have been concealed from the jury. Key witnesses for the defense were, by virtue of the acquisition of G–K–G, employees of Seiko, and if the jurors had not known that Seiko was a defendant they might have thought these witnesses disinterested. In addition, perhaps playing for the sympathy of the jury, the defendants emphasized the financial troubles that ostensibly had induced G–K–G to reduce its sales force in the Chicago area from six to five, though the relevance of the point was obscure since Blumenthal was one of five, not six, when he was fired. We have not found any case in which a judge took steps to conceal the identity of an unpopular defendant from the jury. In the case of an individual, we cannot imagine what feasible steps could be taken unless he elects plastic surgery. Should he be allowed to wear a mask or a hood? To testify from behind a screen? Feasibility is a less serious problem with a corporation. But we would need a much stronger case than this to entertain the possibility that the district judge abused his discretion by failing to conceal the corporate defendant's identity.

It is a separate question whether the judge should have told the jury that Seiko was liable as a matter of law for any violations of the age-discrimination law by G–K–G. But since his ruling on summary judg-

ment had removed the issue from the case, he did not want the jury to consider the issue. He could just have told them not to consider whether Seiko *could* be liable—to decide instead whether, if it could be, it was—but they might have been deeply perplexed. Nor was it an abuse of discretion to keep the indemnification agreement from the jury. Its relevance to the issues was remote; the defendants' argument that the agreement made Seiko's employees disinterested witnesses because their employer had no financial stake in the case is implausible. The potential to confuse was great. Exclusion was therefore proper. Fed.R.Evid. 403.

■ The only other issue that merits discussion, and that only briefly, is whether the jury could reasonably find a *willful* violation. It could. If there was a violation of the Age Discrimination in Employment Act, as the defendants deny but the jury found, it was deliberate and indeed bare-faced. *Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 434–35 (7th Cir.1992); *Shager v. Upjohn Co.*, 913 F.2d 398, 406 (7th Cir.1990). This is not a case in which a defendant, operating at the frontier of the law, violates the law inadvertently. *Heiar v. Crawford County*, 746 F.2d 1190, 1201 (7th Cir.1984).

The judgment against the defendants is therefore affirmed. The dismissal of the EEOC is reversed, but as the EEOC is no longer seeking any relief different from what Blumenthal has obtained, its reinstatement as a plaintiff does not require any further proceedings in the district court. This fact does not (quite) moot the issue of its entitlement to party status, since further proceedings in this court (should a petition for rehearing be filed) or in the Supreme Court are possible.

AFFIRMED IN PART, REVERSED IN PART.