Cynthia D. TRAYLOR, Plaintiff–
Appellant,

v.

Kirk BROWN, et al., Defendants–
Appellees.

No. 01–2542.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 2002.

Decided July 12, 2002.

Armand L. Andry (Argued), Oak Park, IL, for Plaintiff–Appellant.

Erik G. Light (Argued), Office of the Attorney General, Chicago, IL, Deborah L. Ahlstrand, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before COFFEY, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

Cynthia Traylor sued her employer, the Illinois Department of Transportation ("IDOT"), alleging that it had violated Title VII by discriminating against her on the basis of her sex and race when it refused to permit her to perform certain clerical and blacksmith duties. IDOT moved for summary judgment, and the district court granted its motion, concluding that Traylor had not established a *prima facie* case of discrimination, or alternatively, that she had failed to rebut IDOT's legitimate reasons for denying her

requests to perform the duties. Traylor appeals, and we affirm.

## I.

Cynthia Traylor, a college graduate, has been employed by the Illinois Department of Transportation as a "highway maintainer" since November 16, 1993. Highway maintainers are responsible for the preservation and upkeep of the state highway system, and their duties include: repairing and maintaining roads, drainage facilities, guardrails, bridges, traffic signs and other delineators; operating and servicing trucks, snow plows, mowing machines, and other highway equipment; and performing routine housekeeping duties at department headquarters. Additionally, a highway maintainer may be asked to do paperwork or act as a crew leader. These duties, with the exception of the last two, are generally rotated among all of the highway maintainers.

During all of the time relevant to this lawsuit, Traylor worked at the Watseka facility located in Iroquois County, Illinois. Traylor was the only black and the only female employee at the Watseka facility. From her hire date in 1993 until April 1996, Traylor's direct supervisor was Emory Alred, the "field technician" responsible for overseeing the team at the Watseka facility. Gary Dean replaced Alred in 1996 and served as the Watseka facility field technician until March 1998 when James Gromer replaced him. In addition to the field technician, the Watseka facility includes a "lead lead worker", Timothy Fortino, a "lead worker", Timothy McGinnis, and seven highway maintainers, including Traylor. The field technician advises the lead workers on daily job assignments, which the lead workers then communicate to the highway maintainers.

In her lawsuit, Traylor alleges that, from June 1997 through December 1998, IDOT discriminated against her based on her race and sex by refusing to allow her to perform certain clerical and blacksmith duties that white, male employees were allowed to perform. Traylor claims that she asked her supervisors, Tim McGinnis and Tim Fortino, a number of times to permit her to perform these extra duties. They effectively denied her requests by telling her to ask the field technician, by saying "we'll see" and walking away, or by saying that they would let her help if they needed her. She also claims that she asked Alred and Gromer, the field technicians, if she could perform these duties, but that Alred simply ignored her and walked away, while Gromer responded by asking her whether she minded getting her hands dirty at the blacksmith shop. When she said no, Gromer said that he would think about it, and a few days later, when she asked him specifically whether she could perform office duties, he said, "I don't have to let you in that office." Traylor admits that no one ever stated that she could not perform the extra duties because of her race or sex. Rather, she contends that when she repeatedly asked for these assignments, she was always turned down without explanation.

As to the clerical duties, which primarily included paperwork associated with time cards, IDOT explained that Alred assigned these duties to Mark Cluver, another highway maintainer, sometime in 1987 because the employee who previously performed those duties had retired. At that time, IDOT had just begun using a new database system. IDOT maintained that Cluver remained the only person allowed to perform the office duties because he had effectively performed the duties since 1987 and he had developed familiarity with the database system. Traylor claims that this explanation is pretextual and that she is more qualified than Cluver to perform

these duties because she has a college education and past clerical experience.

As to the blacksmith duties, two other highway maintainers, Todd Fletcher and Mark Peterson, performed those duties, which required them to prepare, maintain and repair IDOT equipment. While every team member, including Traylor, had performed these blacksmith duties on occasion when a machine broke down, IDOT explained that Fletcher and Peterson generally perform these duties. Alred claimed that he assigned Peterson and Fletcher blacksmith duties in 1995 because each had previous experience involving the repair and maintenance of similar equipment. Traylor disputed this as well, arguing that she was more qualified to learn blacksmith work than Peterson or Fletcher who are not college educated. It is undisputed that Cluver, Fletcher and Peterson were never compensated at a higher rate or promoted because they performed these extra duties.

On November 19, 1999, Traylor filed a complaint against IDOT, alleging that it discriminated against her on the basis of race and sex in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, by refusing to allow her to perform the clerical and blacksmith duties.[1] The district court granted IDOT's motion for summary judgment, concluding that Traylor had not demonstrated that she had suffered an adverse employment action because, even though other employees were allowed to do certain tasks outside the duties of a highway maintainer, Traylor's pay was not affected, she was not denied an assignment to which she was entitled, and there was no evi-

dence that her career advancement prospects were impaired. Additionally, the district court concluded that, even if Traylor had established a *prima facie* case, IDOT had legitimate, nondiscriminatory reasons for its actions which Traylor failed to rebut. Finally, the district court dismissed the remaining claims in Traylor's complaint, finding that they were outside of the allegations in her initial complaint to the Illinois Department of Human Rights ("IDHR") and untimely.[2]

## II.

■ We review *de novo* the district court's decision to grant summary judgment to IDOT, construing all facts, and drawing all reasonable inferences from those facts, in favor of Traylor, the non-moving party. *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 352 (7th Cir.2002). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ Title VII makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Because Traylor presents no direct evidence of discrimination, we examine her Title VII claim under the

---

1. Traylor also sued Kirk Brown, the Secretary of the Illinois Department of Transportation, and James Jareb, the District Engineer for Traylor's district, and, in addition to her Title VII claim, asserted a claim under the Illinois Human Rights Act, 775 ILCS 5/101 *et seq.*

These claims were all dismissed by the district court on July 13, 2000 and are not before us on appeal.

2. Traylor does not appeal the district court's conclusions as to these remaining claims.

burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] *See Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 326 (7th Cir.2002). Under this method, a plaintiff must establish a *prima facie* case of discrimination. Once she has done so, the employer must then produce a nondiscriminatory reason for the employment action. If the employer does so, the plaintiff must then present sufficient evidence that would enable a trier of fact to find that the explanation is pretextual. *Id.*

In order to establish a *prima facie* case of race or sex discrimination, Traylor was required to establish: (1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably. *See Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 650 (7th Cir.2001). It is undisputed that Traylor meets the first two criteria, and the district court found that she had shown the fourth element, i.e., that there were similarly situated employees who were allowed to perform certain duties that she was not allowed to perform. For purposes of this opinion, we will assume the district court was correct in this determination because it is the third element, i.e., the existence of a materially adverse employment action, that is seriously disputed and that Traylor is ultimately unable to establish.

As noted, Title VII prohibits employers from discriminating against employees with respect to the "terms, conditions or privileges of employment," 42 U.S.C. § 2000e–2(a)(1); "that is, [the employee] must show that she suffered a materially adverse employment action." *Haugerud v. Amery Sch. Dist.,* 259 F.3d 678, 691 (7th Cir.2001). This determination will depend on the particular facts in each case. *Id.* We have defined an adverse employment action as "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Rabinovitz v. Pena,* 89 F.3d 482, 488 (7th Cir. 1996) (citation omitted). Of course, "not everything that makes an employee unhappy" will suffice to meet the adverse action requirement. *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996) (holding that poor evaluations alone do not constitute an adverse employment action). Rather, an employee must show that "material harm has resulted from … the challenged actions." *Haugerud,* 259 F.3d at 692. *See also Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1039 (7th Cir.1998) (noting that "an adverse employment action might occur when an employer

---

**3.** We note that although Traylor pursues the indirect method, she refers to a number of racial remarks made by her colleagues and supervisors. For example, Traylor claimed that she was referred to as the "black girl" or the "token." We have stated that such remarks, to establish a direct case of discrimination, must "be causally related to the adverse employment action at issue," *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 611 (7th Cir.2001), and must be more than the random office banter or stray remark. *See, e.g., Schaffner v. Glencoe Park Dist.,* 256 F.3d 616, 622–23 (7th Cir.2001). In any case, the district court considered these remarks as the basis for a separate hostile work environment claim and, as such, dismissed them as unrelated to the allegations in her original charge filed with the IDHR. Traylor does not appeal that aspect of the dismissal. *See supra* footnote 2.

orders its employees to shun the plaintiff, provided that this activity causes material harm to the plaintiff").

■ Here, Traylor contends that IDOT's refusal to allow her to perform clerical and blacksmith duties constituted an adverse employment action. While Traylor is clearly unhappy with IDOT's refusal to allow her to perform the requested duties, she was not terminated, demoted, or disciplined. Furthermore, her pay was unaffected and her job responsibilities were not materially diminished. The employees who performed these extra duties received no promotions, higher pay or prestigious titles for doing so. In short, the failure to assign Traylor these extra duties may have been distressing to her, but did not cause her material harm.

Traylor responds, however, that IDOT's refusal to allow her to perform the clerical duties did cause her material harm because it denied her prestige and professional advancement. She argues that if she were allowed to perform those duties, she would then be qualified to apply for and perform other, higher paying jobs. Traylor relies primarily upon our decision in *Bryson v. Chicago State Univ.*, 96 F.3d 912 (7th Cir.1996), to support her argument. In *Bryson*, we evaluated a hostile work environment claim where the plaintiff, a tenured professor, alleged that the employer university stripped her of the title "Special Assistant to the Dean" and denied her reappointment to various pres-

tigious committees. In holding that the plaintiff established that the employer's action affected a tangible aspect of her employment, we noted that there was evidence that "committee assignments and titles may play a part in preparing for an administrative academic career.... Depriving someone of the building blocks for such a promotion ... is just as serious as depriving her of the job itself." *Bryson*, 96 F.3d at 917. In this case, however, Traylor has suffered no loss in title or job responsibility, and has presented no evidence, other than her own conjecture, to establish that she suffered a deprivation of the "building blocks" for promotion. Unlike the plaintiff in *Bryson*, she provided no evidence that the sort of responsibilities she wanted to perform were important to achieve a higher position for which she was otherwise qualified. *Bryson*, 96 F.3d at 916. Thus, we agree with the district court that Traylor suffered no adverse employment action and therefore is unable to establish a *prima facie* case of race or sex discrimination. *See, e.g., Haugerud*, 259 F.3d at 691–92 (where male custodians instructed not to help female custodians and employer gave plaintiff additional responsibilities above those expected of male custodians, but plaintiff suffered no material harm, plaintiff did not suffer adverse employment action).[4]

■ Alternatively, Traylor argues that the district court erred as a matter of law by requiring her to show an adverse employment action after it had already

---

4. Additionally, we agree with the district court's conclusion that Traylor did not establish she was entitled to perform these clerical duties. Traylor had asserted to the district court that the agreement between IDOT and the local Teamsters union required the rotation of these duties among highway maintainers. However, she did not present any evidence of this requirement, other than a statement in her own affidavit and in her

own deposition testimony. IDOT did provide the district court a copy of the agreement, and upon reviewing it, the district court correctly concluded that the agreement provided no evidence that IDOT was required to allow each highway maintainer to perform clerical duties. In any case, Traylor merely refers to the alleged requirement in the fact section of her brief but does not further raise or develop any argument relating to this issue.

determined that she was treated differently than other employees. Essentially, she is arguing that the disparate treatment, that other highway maintainers were permitted to perform the requested duties, is *itself* an adverse employment action. Her argument, if successful, converts the four-pronged *prima facie* case into a three-pronged one and contravenes well-settled law governing Title VII cases. Rather, a plaintiff must prove both disparate treatment and an adverse employment action. *Hoffman–Dombrowski*, 254 F.3d at 650. And, if a "non-moving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.' " *Oest* at 610 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, Traylor's failure to establish one element of her *prima facie* case, even if she has established all of the others, is enough to support a grant of summary judgment to her employer.

◼ Even if Traylor had established a *prima facie* case of race or sex discrimination, we agree with the district court that IDOT set forth legitimate, nondiscriminatory reasons for its refusal to allow her to perform the extra duties and that Traylor failed to rebut those reasons. Specifically, IDOT claimed that Cluver was the only person allowed to perform office duties since 1987, and the undisputed record reveals that he had performed those duties effectively. Likewise, it is undisputed that Peterson and Fletcher had experience performing blacksmith duties. Traylor does not attempt to contradict IDOT's proffered reasons, but merely claims that she was as qualified as Cluver, Peterson and Fletcher to learn the extra duties, and perhaps

more qualified because she had a college education and they did not. No doubt Traylor is capable of doing the work. But her own ability to *learn to perform* these extra duties has nothing to do with IDOT's explanation that other employees were already performing those duties satisfactorily and effectively. She presented no evidence to refute that explanation, which we conclude to be perfectly reasonable. It is entirely reasonable for an employer to prefer that only one or two employees perform a certain task to achieve greater efficiency or to reduce training time and expense. We have stated time and time again that we do not sit as a super-personnel department over employers scrutinizing and second-guessing every decision they make, *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir.2002), and that maxim applies here as well.

◼ Traylor's last argument, citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), is that summary judgment is improper where the plaintiff sets forth a *prima facie* case and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action. *Id.* at 148, 120 S.Ct. 2097. That is entirely true, but, putting aside for the moment our conclusion that Traylor did not establish a *prima facie* case of discrimination, she also failed to present such sufficient evidence that would enable a reasonable trier of fact to disbelieve IDOT's explanations. Traylor argues that, under *Reeves*, summary judgment was improper because a trier of fact *could* disbelieve IDOT's proffered reasons because they were not offered by "disinterested witnesses" (i.e., IDOT employees). She argues that under *Reeves*. "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncon-

tradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151, 120 S.Ct. 2097 (citation omitted). We do not interpret the quoted language so broadly as to require a court to ignore the uncontroverted testimony of company employees or to conclude, where a proffered reason is established through such testimony, that it is necessarily pretextual. To so hold would essentially prevent any employer from prevailing at the summary judgment stage because an employer will almost always have to rely on the testimony of one of its agents to explain why the agent took the disputed action. Moreover, consistent with the plaintiff's ultimate burden of proof under *McDonnell Douglas*, a plaintiff cannot avoid summary judgment by merely claiming a jury could disbelieve the employer's reason. *Equal Employment Opportunity Commission v. G–K–G, Inc.*, 39 F.3d 740, 746 (7th Cir.1994). But that is all Traylor does here. The undisputed evidence shows that IDOT denied Traylor's request to perform other duties because other employees were already performing those duties satisfactorily and effectively. Traylor presented nothing, other than her own conjecture, to call this explanation into doubt. Accordingly, she is unable to undermine the legitimacy of IDOT's explanation, and for this additional reason, IDOT was entitled to summary judgment.

### III.

Because Traylor was unable to present sufficient evidence that she suffered an adverse employment action and because she failed to rebut her employer's legitimate reasons for denying her requests to perform additional duties, we affirm the district court granting summary judgment to the Illinois Department of Transportation.