**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued December 7, 2004
Decided June 8, 2005

Before

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2094

PAMELA J. JORDAN,

    *Plaintiff-Appellant,*

    *v.*

MICHAEL CHERTOFF,[1] SECRETARY,
U.S. DEPARTMENT OF HOMELAND
SECURITY,

    *Defendant-Appellee.*

Appeal from the United States District
Court for the Southern District
of Indiana, Indianapolis Division.

No. 02 0236

Richard L. Young,
*Judge.*

## O R D E R

Pamela Jordan contends that her former employer, the United States Customs Service ("Customs"),[2] discriminated against her on the basis of her race and that it retaliated against her for complaining about alleged discrimination, in

---

[1]Pursuant to Fed. R. App. P. 43(c)(2), we have substituted Michael Chertoff for Tom Ridge as the named respondent.

[2]On March 1, 2003, the United States Customs Service became part of the Department of Homeland Security. *See* Public Law 107-296. Prior to that date, the United States Customs Service was an agency within the Department of the Treasury.

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* In particular, Jordan's complaint alleges that Customs acted unlawfully when: (1) she did not receive a lateral reassignment in September 1996, and (2) she was not selected for a promotion to an operating accountant position in November 1996. The district court granted summary judgment in favor of Customs. We agree that even if Jordan had established a prima facie case of discrimination or retaliation on either claim, she has not presented sufficient evidence to create a genuine issue of fact as to whether Customs's reasons for not reassigning her and not promoting her were pretextual. Therefore, as we explain more fully below, we affirm.

## I. Background

In 1988, Customs hired Pamela Jordan, an African American woman, as an accounting technician in its Accounting Services Division. Jordan possessed a bachelor of science degree in accounting from Indiana State University but had not passed the Certified Public Accountant examination.

The Accounting Services Division contains four groups, including the Accounts Payable Group and Financial Reporting and Analysis Group. Jordan worked in several units within the Commercial Accounts division of the Accounts Payable Group throughout her career, including the Imprest Fund Unit and its Internal Recurring Obligation ("IRO") unit. The Forfeiture Fund Team ("FFT") is another unit within the Accounting Services Division. The FFT falls under the Financial Reporting and Analysis Group.

From her assignment on the IRO, Customs "detailed" Jordan to the FFT in February 1995. Her original 120 day detail to the FFT was extended for an additional 120 days, and she then returned to her assignment on the IRO in October 1995. After her return to the IRO, she requested permanent reassignment to the FFT, but she was not reassigned at that time. In January 1996, Jordan filed a complaint with the Equal Employment Opportunity ("EEO") Division, a part of the Department of the Treasury, alleging that Customs had discriminated against her on the basis of her race and retaliated against her for filing previous EEO complaints.[3]

In September 1996, Customs received authorization to hire seven new accounting technicians, one of whom would work on the FFT. Tom Diaforli, director of the Accounting Services Division, asked group leaders to consider where to assign the new technicians and considered reassignment requests from current

---

[3]Jordan had previously filed EEO complaints in 1991, 1994, and 1995. She has also unsuccessfully filed suit against Customs on several previous occasions. *See Jordan v. Summers*, 205 F.3d 337 (7th Cir. 2000); *Jordan v. Summers*, Cause No. IP 98-1092-C-H/G (S.D. Ind.), Entry on Defendant's Motion for Summary Judgment Mar. 22, 2000; *Jordan v. O'Neill*, Nos. 01-1768, 01-2266, 2002 WL 193784 (7th Cir. Feb. 2, 2002) (unpublished).

accounting technicians, including Jordan. John Accetturo, the Accounts Payable group leader, told Diaforli that the group could not afford to replace Jordan with a new accounting technician at that time. The IRO unit was entering its busiest time of the year and was involved in time-consuming duties including closing out the government's fiscal year, which ended September 30, and setting up the new fiscal year. In addition, the group had only three full-time accounting technicians, including Jordan, who were already working overtime, while two years earlier the group had five experienced accounting technicians.

Diaforli decided that because of the workload in the IRO unit, Jordan could not be reassigned at that time. No accounting technician in Commercial Accounts was detailed or reassigned between August and December of 1996. On September 26, 1996, Diaforli assigned Michele Perkins, a white clerk without an accounting degree who had been recommended for promotion to accounting technician, to fill the vacant technician position in the FFT. Jordan filed another EEO complaint in December 1996.

Earlier that year, Customs posted an announcement seeking applications for up to eleven operating accountant positions in the Indianapolis Accounting Services Division. Individuals could be hired under any of the General Schedule grades advertised, GS-5, GS-7, GS-9, GS-11, or GS-12, and no fixed number of positions was allocated to any grade. As bargaining unit positions, the actions taken to fill the positions were subject to the procedures of a 1991 Merit Promotion Plan between the National Treasury Employees Union and the Customs Service (the "Plan"). Jordan, in GS-7 at the time, applied for a GS-7 or GS-9 position but was not selected.

In May 1998, Jordan was permanently assigned to the FFT, where she worked until her resignation in 2001. She then filed this suit, alleging that Customs's decisions not to reassign her to the FFT in September 1996 and failure to promote her to an operating accountant position were on account of her race and in retaliation for filing prior EEO complaints. The district court granted Customs's motion for summary judgment.

## II. Analysis

Summary judgment is appropriate when, reviewing all evidence in the light most favorable to the nonmoving party, "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-55 (1986); *Germano v. Winnebago County, Ill.*, 403 F.3d 926, 927 (7th Cir. 2005). We review a district court's grant of summary judgment de novo. *Germano*, 403 F.3d at 927.

  A. Summary judgment was proper on Jordan's non-reassignment to the Forfeiture Fund Team claim.

  Jordan first contends that Customs's decision not to assign her to the FFT in September 1996 was based on her race and in retaliation for filing previous EEO complaints. A plaintiff in a Title VII case may proceed under either a direct or indirect method of proof. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Because Jordan presented no direct evidence of discrimination, she proceeded under the indirect method of proof enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this indirect method, a plaintiff must first establish a prima facie case of discrimination. *Butts,* 387 F.3d at 924. If she does so, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* If the defendant satisfies this burden, the burden of production shifts back to the plaintiff to present sufficient evidence for a trier of fact to find that the articulated reasons were a pretext for discrimination. *Id.* The ultimate burden of persuasion remains at all times with the plaintiff. *Id.*

  A prima facie case of racial discrimination requires a plaintiff to show: (1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) the defendant treated similarly situated employees outside her class more favorably. *See, e.g., Butts*, 387 F.3d at 924; *Grayson v. O'Neill*, 308 F.3d 808, 817-18 (7th Cir. 2002). To prove a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a statutorily protected activity; (2) she was performing her job satisfactorily at the time of the adverse action; (3) she suffered an adverse action from the employer; and (4) similarly situated employees who did not engage in statutorily protected activity were treated more favorably than the plaintiff. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1031 (7th Cir. 2004); *Stone v. City of Indianapolis*, 281 F.3d 640, 643 (7th Cir. 2002). Customs contends Jordan summary judgment was proper because Jordan did not suffer an adverse employment action.[4]

  This court has generally recognized three types of actions as "adverse employment actions": (1) instances where the employee's compensation or other financial terms of employment are diminished; (2) cases where a nominally lateral

---

[4] "We observed in *Herrnreiter* [], decided after *Stone* [], that retaliation claims need not always involve an adverse action directly related to *employment,* just an adverse action by an employer of some kind." *Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1031 n.4 (7th Cir. 2004) (citing *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 745 (7th Cir. 2002)). Because Jordan only alleged adverse action related to her employment in support of her retaliation claim, we will evaluate her evidence in terms of whether it amounts to an adverse employment action. *See id.*

transfer with no change in financial terms significantly reduces an employee's career prospects by preventing her from using the skills in which he is trained and experienced; and (3) instances where conditions are changed in a negative way. *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). Of course, "not everything that makes an employee unhappy" constitutes an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Here, Jordan contends that Customs's decision not to reassign her to the FFT was an adverse employment action. Although the record reflects that Jordan preferred her work as an accounting technician on the FFT over her work as an accounting technician in the IRO, it is undisputed that Jordan's salary, grade, benefits and title were the same in both positions. In addition, the job descriptions for each position are identical. An employee's subjective preference for one position over another is not sufficient to show an adverse employment action. *Herrnreiter*, 315 F.3d at 745.

Jordan contends, however, that Customs's refusal to reassign her to the FFT in September 1996 denied her experience that would have been helpful in her career advancement. She also argues that non-reassignment negatively affected her chances for promotion because she was denied the opportunity for cross-training.

We are not unsympathetic to Jordan's argument, and we have recognized before that "[d]epriving someone of the building blocks of promotion . . . is just as serious as depriving her of the job itself." *Bryson v. Chicago State Univ.*, 96 F.3d 912, 917 (7th Cir. 1996). In support of her assertion that reassignment to the FFT would have helped her promotion chances, however, Jordan offers only speculation, which is insufficient to survive summary judgment. *O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004). None of the documents to which Jordan points us contains any objective evidence that accounting technicians on the FFT are more likely to be promoted than accounting technicians in the IRO. In addition, although she points to a candidate's "experience" as a factor in the decision to select operating accountants (the position to which she applied in March 1996), she points us to no objective evidence that experience as an accounting technician in the FFT would have been more valuable for career advancement than experience as an accounting technician in the IRO. *See O'Neal*, 392 F.3d at 912-13 (transfer from administrative sergeant to beat sergeant was not adverse employment action without objective evidence that promotions were more likely from the position of administrative sergeant); *McKenzie v. Milwaukee County*, 381 F.3d 619, 625-26 (7th Cir. 2004) (transfer did not constitute an actionable adverse employment action because two positions were deemed materially equivalent).

The documents to which Jordan points us are also insufficient to create a genuine issue of material fact as to whether Customs denied her cross-training that would have helped her career advancement. Her own conjecture (*see* Appt. App.

30, 35, 36) is not sufficient. *See Traylor v. Brown*, 295 F.3d 783, 789 (7th Cir. 2002). Nor, for example, is a handwritten note allegedly from a supervisor to Jordan in 1991 that states, "From personal experience I realize that cross-training is professionally career enhancing." After all, Jordan did receive cross-training. That is, even if cross-training was important for career advancement at Customs, as Jordan maintains, the fact remains that she served an extended eight month detail on the FFT. Jordan points us to no evidence that additional time on the FFT–a place where she had already worked–would have made her a better candidate for a promotion than additional experience in the IRO.

Instead, Jordan is similar to the plaintiff in *Traylor* who "suffered no loss in title or job responsibility, and has presented no evidence, other than her own conjecture, to establish that she suffered a deprivation of the 'building blocks' for promotion." *See Traylor*, 295 F.3d at 789. Like the plaintiff in *Traylor* and unlike the plaintiff in *Bryson,* "she provided no evidence that the sort of responsibilities she wanted to perform were important to achieve a higher position for which she was otherwise qualified." *See id.* (citing *Bryson*, 96 F.3d at 916).

In any event, we also agree with the district court that even if Jordan had established a prima facie case of discrimination on the basis of race or retaliation, Jordan has not presented evidence sufficient for a trier of fact to find that the reason Customs provided for not reassigning her was pretextual. In order to show pretext, Jordan had to establish that Customs's proffered reason for not reassigning her to the FFT in September 1996 was false, contrived to mask unlawful discrimination. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Customs asserts that it could not assign Jordan to the FFT in September 1996 because the IRO's workload did not allow it to reassign anyone at that time.

After Jordan's return to the IRO in the fall of 1995, an accounting technician position did not become open in the FFT until September 1996. September 30 marked the end of the government's fiscal year, and the IRO was working to pay as many invoices as possible by that date. Employees in the IRO were already working overtime, and the IRO was also low on accounting technicians. In addition, it is undisputed that no one in Commercial Accounts was detailed or reassigned between August and December of 1996.

Jordan has not created a genuine issue of fact as to whether this reason lacks a factual basis. For example, she argues that the district court failed to consider an e-mail allegedly sent from Tom Smith, a supervisor in the FFT. The e-mail contained an article entitled "The Costs of Complaints," about the costs of federal discrimination complaints, along with the comment, "Interesting reading." However, this message was sent in 1999, two and a half years after the incident in question, and Jordan points to no evidence indicating that Smith had any role in Diaforli's decision not to reassign Jordan to the FFT in 1996. Likewise, a lead accounting technician's statement that he did not know of any person other than

Jordan who returned to work in the IRO after a detail out of the IRO does not create an issue of fact as to whether Customs's proffered reason for not reassigning her in September 1996 was pretextual.[5]

Therefore, summary judgment was proper on Jordan's claim that the decision not to reassign her to the FFT in September 1996 was unlawful.

B.      Summary judgment was proper on Jordan's failure to promote claim.

Jordan also contends that Customs's decision not to promote her to an operating accountant position in November 1996 was on account of her race and in retaliation for filing EEO complaints.  The district court granted summary judgment in Customs's favor on these claims as well.

To establish a prima facie case for the failure to promote on account of race, a plaintiff must show: (1) she is a member of a protected class, (2) she was qualified for the position she sought, (3) she was rejected for the position, and (4) the employee selected was not a member of the protected group and was not better qualified than the plaintiff.  *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).  As we set forth earlier, a prima facie case of retaliation requires a plaintiff to show: (1) she engaged in a statutorily protected activity; (2) she was performing her job satisfactorily at the time of the adverse employment action; (3) she suffered an adverse action from the employer; and (4) similarly situated employees who did not engage in statutorily protected activity were treated more favorably than the plaintiff.  *Williams*, 361 F.3d at 1031; *Stone*, 281 F.3d at 643.  In both instances, if the plaintiff satisfies her prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action.  *Butts,* 387 F.3d at 924; *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559-60 (7th Cir. 2004).  If the defendant satisfies this burden, the burden of production shifts back to the plaintiff to present sufficient evidence for a trier of fact to find that the articulated reasons were a pretext for discrimination.  *Butts,* 387 F.3d at 924*; Hudson*, 375 F.3d at 559-60.

Customs first contends that Jordan's claim fails because she cannot show that she was equally or better qualified for the position than the employees selected.  Jordan's failure-to-promote claim arises out of a March 1996 posting for up to eleven accountant positions in the Indianapolis Accounting Services Division office.  The announcement sought applicants for positions at GS levels 5, 7, 9, 11, and 12.  As required by the Plan, Jordan submitted an application and statement of her "Knowledge, Skills, and Abilities."  In accordance with the Plan, these written applications were then submitted to an evaluation panel.  In this case, the panel

---

[5]We note also that Jordan's claim in this case alleges as unlawful Customs's failure to reassign her to the FFT in September 1996, not its termination of her FFT detail in November 1995.

consisted of two African American and one Caucasian accountants, all based in Washington, D.C. It is undisputed that during their review of the applications, the panel members had no knowledge of Jordan's race and did not know that she had submitted prior EEO complaints.

The score from the three-member panel determined each candidate's placement on a "best qualified register." Jordan's score from the three-member panel placed her thirteenth out of sixteen candidates on the "best qualified" register for the GS 7/9 position. According to the Plan, the following rule, known as the "rule of five," applied to eligibility for selection under the "best qualified" register:

> if the selecting official is selecting for more than one position, selection for the first vacancy must be made from among the top five candidates referred. Selection for the second vacancy must be from among the top six candidates referred, etc.

At any time, however, the Plan also provided that a selection could be made from an "alternate staffing method." That is, any candidate could be selected from an alternate staffing register without regard to the Plan rules that apply to the best qualified lists because alternate staffing candidates already had experience at the grade level on the register.

The Office of Human Resources sent alternate staffing registers and "best qualified" registers to Diaforli. Diaforli then selected three persons to serve on an interview panel, instructed them to interview the candidates and to recommend selections to him, and asked the panel to recommend as many experienced GS 11 or 12 candidates as possible. The panel then interviewed candidates using standardized questions.

The first five candidates selected for positions were taken from the GS 11/12 alternate staffing register, as allowed by the Plan. These candidates, all external applicants, were already GS 11/12 accountants. Jordan does not contend that she was more qualified than the five candidates selected from the GS 11/12 alternate staffing register, and she did not possess the years of accounting experience and CPA or MBA that these applicants possessed.

As a result of making these five selections from the alternate staffing register, only six positions remained. The Plan mandated that any selections from the best qualified registers use the "rule of five." Because of the "rule of five," however, Jordan could not be selected, as she was rated thirteenth out of sixteen applicants on the GS 7/9 best qualified register. Nine positions would have to have been filled from the GS 7/9 register before Jordan could have been selected, but there were only six spots left.

Jordan contends she was better qualified than some persons selected from the GS 7/9 register, even though the ratings panel scored her below them, because she had a degree in accounting. She also argues that the crediting plan "misstated

the vacancy announcement" because it "emphasized experience over education." (Appt. Br. at 39.)  The position announcement did not emphasize education, however, as its text stated that the position required either an accounting degree or its equivalent.  Whether applicants met this minimal qualification was determined before the application packets were presented to the ratings panel, and the ratings panel, looking at the comprehensive application, scored her below the selected applicants.

Unfortunately for Jordan, even if Jordan had established a prima facie case of discrimination on account of race or retaliation,[6] she has not set forth sufficient evidence that Customs's reasons for selecting the eleven candidates was pretextual. As we discussed, Customs first selected five experienced accountants.  It then selected applicants from a "best qualified register," persons who were placed on the register by a panel that did not know Jordan's race or that she had filed prior EEO complaints.  Jordan's score from the blind ratings panel meant that she could not be selected after Customs selected the five experience accountants.  Although Jordan contends that "Customs did not follow its normal procedure of promoting from within, but rather, requested applications from expensive accountants from outside who had CPA's or MBA's or years of accounting experience," she does not point us to any evidence that Customs's normal procedure was to promote from within.  In fact, Jordan herself stated that Customs had hired from outside the agency in the past. (R. 56, p. 134.)  Her other arguments are likewise insufficient to create an issue of fact for trial.

### III.   Conclusion

The district court's grant of summary judgment in favor of the defendant is AFFIRMED.

---

[6]The district court found that Jordan failed to establish a prima facie case of retaliation because she failed to present the name of any person who did not participate in the EEO process and was selected for a position.